Wade v. Carpenter et al.

WADE v. CARPENTER et al.

4   361
83  527

A person appointed guardian of a minor, having no father, under the act entitled "An act concerning minors, orphans and guardians," approved January 25, 1839, became guardian of the property, as well as of the person, of the ward.

Proceedings by the guardian to sell the real estate of the ward, under the act of January 25, 1839, did not abate by the resignation of the guardian.

Where a guardian of the person and property of the minor, filed a petition in the county court, to sell the real estate of the ward, and before a hearing upon the petition, resigned; and where, upon the appointment of another guardian, the proceedings to sell the real estate, were carried on, without filing a new petition, or serving a new notice upon the ward, and a license to sell was granted to the new guardian, as successor of the one in whose name the proceedings were commenced; Held, That the proceeding for license to sell, did not abate, by reason of the resignation of the first guardian; and that the license was properly granted to the second guardian.

Where in a proceeding in Chancery to set aside a guardian's sale of real estate, it was alleged that the ward never had any legal notice of the application to sell the real estate; and where it appeared from the record of the county court, which granted the license to sell, that it had been "proved to the satisfaction of that court, that notice, according to law, had been given" of the hearing of said petition to sell said real estate; Held, That the decision of the county court on the sufficiency of the service of notice, could not be examined into collaterally.

The approval by the county court of a sale of a minor's real estate by his guardian, as required by section 1506 of the Code, in order to make the sale valid, is not a mere formality.

A deed takes effect from delivery; and a guardian's deed cannot be delivered until after it is approved by the county court.  Such approval, is an affirmation, not merely of the deed, but of the sale.

Chapter four of the Code, was intended to save all existing relations, duties and rights, until they were duly superceded under the provisions of that statute.

*Appeal from the Des Moines District Court.*

THIS was a bill in Chancery, filed by Wade, a minor, by his guardian, to set aside and hold for naught, a sale of a certain parcel of land, sold by Levi Hagar, claiming to be guardian, and therefore properly authorized. The bill alleges, that the premises were not derived from either parent of the complainant; that one Nancy Yates, (formerly Nancy Wade,) as mother and guardian of complainant, without having been appointed guardian of his property, and without having given bond, and without taking any oath, and without being guardian in fact—as guardian, on the 14th February, 1852, filed in the office of the county court of Des Moines county, a petition to sell the real estate, without describing it; that, on the 18th February, she resigned her supposed guardianship, and on the 19th February, the said Levi Hagar was appointed guardian of complainant's property, without his knowledge or consent; that said Hagar never filed a petition for leave to sell, nor did he, or said Nancy, ever give complainant notice of any application or petition, nor did any one serve him with a copy of the petition, nor did he appear to the same; that on the 1st March, 1852, the said county court granted said Hagar license to sell, without his having filed a petition or given notice; that said Hagar, on the 2d of March, 1852, without appraisement or notice, and at private sale, sold, and executed a deed of the same, to said Carpenter and Tallant, (two of the defendants herein,) for less than one-half the true value thereof, and without the knowledge or consent of complainant; that on the 3d of March, Hagar filed a bond, with Carpenter and Tallant as sureties, which he alleges to be void; that complainant has never received any of the purchase money, and that the said proceedings are, in other respects, illegal, defective and insufficient. The complainant charges that the said proceedings are fraudulent on the part of all the parties concerned therewith; that the deed from Hagar to Carpenter and Tallant, is outstanding; that this, with the proceed-

ings of record in the county court, are a cloud upon complainant's title, and render the same unquiet; that the premises are in the possession of said Carpenter and the other respondents, who are claiming title thereto, and holding adversely; and that when the said defendants respectively obtained an interest in said premises, they had full notice of all the facts and circumstances before set forth. He then prays that the certain persons may be made parties; that they may answer; that the said deed, and proceedings and record, may be canceled and set aside; and that the premises may be restored to him; and for such further relief, &c. The defendants filed answers, but it is unnecessary to set them out in detail. The court found in favor of the respondents, and the complainant appeals. The facts in the case, and the questions arising thereon and determined, will appear from the opinion of the court.

*C. Ben Darwin*, for the appellant.

*David Rorer*, for the appellees.

WOODWARD, J.—The complainant makes several questions in his argument, which are not suggested by any statements or charges in the bill. We will follow the complainant's case, as presented in his petition. The first question arises on the averment that Nancy Wade (Yates) was not guardian of the property of the minor; and it is further alleged, that she was not guardian even of the person. It appears by the record, that she was appointed in September, 1843, whilst she was the widow of William Wade. She afterward intermarried with Yates. In February, 1852, she filed her petition for license to sell; and it is claimed that by her appointment, she was not guardian of the property, and therefore had no right or power to file such petition; and that, consequently, the license was void. She was appointed under the act of January 25, 1839. Rev. Stat. 1843, 430. The first section of this act provides, that the Court of Probate should appoint guardians for minors, the father

being dead, and in all cases where the minor was possessed of, or entitled to, real or personal estate. Those above the age of fourteen years, might choose their guardians. By section third, when a minor, having a father living, was entitled to real or personal estate, not derived from his father, the father was to be notified to show cause why a guardian for such minor should not be appointed; and if no sufficient reason was shown, one should be named; and if there was no cause to the contrary, the father was entitled to the guardianship. When any person other than the father was appointed, he was to have the charge and management of the estate, but no control over the person of the minor. By section four, if the father were insane or incapable, the court should appoint, as though the father were dead. By section five, guardians, by virtue of their office, as such, had power in all cases to prosecute and defend for their wards. By section six, " The Court of Probate shall take, of each guardian appointed under this act, bond with good security, &c., conditioned as follows." Then follows a form for the condition, in which the only words which can refer to the char·acter of the guardianship, are: " A. B., who has been appointed guardian for C. D. ;" and the only words relating to property of any kind, are: " And shall comply with all orders of said court, relative to the goods, chattels and moneys of such minor, and render and pay to such minor all moneys, goods and chattels, title papers, and effects, which may come to " his possession.

It seems, from these provisions, that when a guardian was appointed under this act, there being no father, be became guardian of the property, if there were any, as well as of the person. Two or three provisions indicate this. There is but one bond prescribed for all cases, and that certainly contemplates a wardship in respect to the property. Now, the bond given by Mrs. Wade, in 1843, is in the precise terms of the above act; so that we do not perceive weight in the objection that she was not guardian in respect to the property; and consequently there is no objection to be made to her right or power to file a petition to sell.

The next question arises on these facts: She filed her petition on the 14th February, 1852. While it was pending, namely, on the 18th February, she resigned her guardianship, and on the 19th, Levi Hagar was appointed. Here it is objected, that on her resignation there was no guardian, and the petition abated; and that there was no petition by, and notice from, Hagar as guardian, so that the license issued to him had no foundation in law. This objection does not appear to us well made. The petition would not abate by death or resignation. The matter is analogous to the case of an administrator. It is true that the petition would abate, at common law; but at no time, under our law, either in the present or past system of practice, would a suit by an administrator be abated by his death or resignation; and though *some* time would necessarily pass between such a termination of the office and a new appointment, yet it has never been regarded as abating the suit; but the new appointment has relation to that event, so as to cover all needful matters. There is no necessity, either in reason or in law, that the resignation of Mrs. Yates should be held to abate her petition, and that Hagar should be held to commence anew—filing a new petition and giving a new notice. Hagar was appointed under the Code, where a distinction more manifest, is maintained between a guardian of the person and of the property, and his appointment is expressly, and in terms, over the property.

But, again, it is urged that no legal notice of the petition was given to the minor. The application to sell was made under the Code, and section 1501 directs that a copy of the petition, with a notice, &c., shall be served on the minor personally. The question occurs on the service. This was made by one Walbridge, who does not appear to have been an officer of the law, but makes affidavit that he served by reading. In the first place, the record of the court is full and explicit, and would seem to settle the question of notice. It says: " And thereupon, it having been proved to the satisfaction of the court, that notice, according to law, has been given of the hearing of said petition, and all and singular

the premises being seen and heard, it is ordered," &c.    It then refers to Hagar being the successor of Nancy Yates, who had resigned, and concludes by ordering, "that he have authority to sell said real estate, as in such case by statute provided, as fully and amply as said Nancy Yates might have been empowered to do, were she still guardian; and that said Hagar have authority to sell said real estate in such manner and upon such terms as he may deem most expe-dient."    In the next place, Walbridge gives testimony in the cause, showing that he served by copy, as well as by reading.    This is not inconsistent with his return; and even if not properly admissible in the present suit, serves to show that the county court may have had evidence before it, which enabled it to make the record, that "thereupon, it having been proved to the satisfaction of the court, that no-tice according to law has been given," it is ordered, &c.    See *Cooper* v. *Sunderland*, 3 Iowa, 114.

It is then objected that Mrs. Yates gave no bond, and took no oath.    It is presumed that reference is here intended to section 1504 of the Code, for, as to her appointment, she complied with the law then in force, and her petition to sell is verified by oath, under section 1501.    Section 1504 re-lates to the sale, and she does not accomplish this, but Ha-gar does it, and no objection is made as to him, in this re-spect.    Other objections are covered by the license granted by the county court, "to sell in such manner, and upon such terms, as he may deem most expedient;" and by the approval of the said court.    This approval is not a formal-ity.    Code, § 1506.    Deeds may be made by the guardian in his own name, but they must be returned to the court, and the sale or mortgage be approved, before the same are valid.    This approval is not a mere formality.    Code, § 1507. In regard to administrators, see Code, § 1355.    And by the terms of section 1506, it is the sale or mortgage, and not merely the deed, that is approved, as is urged in the argu-ment.

Another argument urged is, that the law under which Mrs. Wade was appointed guardian, was repealed, and that

Wade v. Carpenter et al.

consequently her authority ceased. But no such effect was intended in the enactment of the Code. Chapter four was intended to save all existing relations, duties and rights, until they were duly superceded under the provisions of that statute. No sufficient fraudulency in the proceedings is shown, to invalidate the sale in the hands of even Carpenter and Tallant, who were the sureties of Hagar; and still less is there to affect the other defendants, who bought under them. Again; a further objection is made, that the deed bears date the 2d of March, whilst the guardian's bond is not approved until the 3d of March. There is evidence that the date of the deed is a mistake by one day. But even if it were not so, why should this date control the whole matter? The deed takes effect from its delivery, and it cannot be delivered until approved, which the record shows to have been done on the third, and which is an affirmation, not merely of the deed, but of the sale.

The objections first made in the argument, not based upon any allegations in the petition, and not being of a nature to be raised on the hearing for the first time, are passed by.

The decree of the District Court is affirmed.

END OF CASES DECIDED AT THE DECEMBER TERM, A. D. 1856.