Shawhan v. Loffer.

---

SHAWHAN *et al.* v. LOFFER.

1. Dower: ADMEASUREMENT OF UNDER CODE OF 1851. Under section 1394 *et sequor* of the Code of 1851, the County Court had jurisdiction to admeasure dower.

2. —— REPEAL OF STATUTE: EFFECT OF ON PROCEEDINGS COMMENCED. The repeal of sections 1394 and 1404 of the Code of 1851 did not, under section twenty-six thereof (Rev. § 29), affect a proceeding for the admeasurement of dower previously commenced under said sections repealed. *Inskeep* v. *Inskeep* (5 Iowa, 204); *Burk* v. *Barron* (8 id. 135).

Shawhan v. Loffer.

3. Jurisdiction: DEFECTIVE NOTICE AND SERVICE: COLLATERAL ATTACK. Although a notice be defective or the service thereof imperfect, if the court before whom it was returnable has determined in favor of the sufficiency thereof, the judgment will not be held void in a collateral proceeding.

4. —— APPLICATION OF THE RULE: ADMEASUREMENT OF DOWER. Where a notice in a proceeding before the County Court for the admeasurement of dower was not directed to the heirs by name, but "to all interested in the estate of," etc., and it did not appear from the record, but was shown by parol testimony, that the notice was served upon the heirs, it was *held*, that these defects could not avail, in a collateral proceeding, to defeat the title of a purchaser acquired at a sale ordered under said proceedings of admeasurement.

5. —— COURTS OF SUPERIOR AND INFERIOR JURISDICTION. The proceedings of courts of general and superior jurisdiction cannot be collaterally impeached or contradicted, unless void upon their face for want of jurisdiction; and the judgments and decrees of inferior courts stand upon the same footing if the jurisdiction sufficiently appears.

6. —— PROOF OF SERVICE: CONSTRUCTION OF STATUTE. The object of section 2428, of the Code of 1851, providing, that the posting up or service of any notice or other paper required by law may be proven by the affidavit of any competent witness, attached to the copy of such notice or paper and made within six months from the time of service, was not to make such affidavit the exclusive means of providing the service, but simply to provide, that such proof should be sufficient. The service may be proven by the oath of a person cognizant of the fact, or in any other way recognized by the rules of evidence.

7. Executor and administrator: APPOINTMENT PRESUMED. Where the record of a proceeding to admeasure dower, under which a sale was made by an administrator, referred to him as such, and showed that he made a report and finally resigned, as administrator, it was *held*, that this was *prima facie* sufficient to establish the fact of his appointment, although it was not shown by the record.

8. —— RESIGNATION: POWER OF SUCCESSOR. Upon the resignation of an administrator, the person appointed his successor, whatever may be the peculiar designation applied to him, succeeds to all the duties and powers of his predecessor, and he may complete the discharge of obligations first assumed by the latter without ·delay or interruption.

Shawhan v. Loffer.

*Appeal from Keokuk District Court.*

FRIDAY, APRIL 10.

THIS action was brought to recover certain lands in Keokuk county. The petition sets out that the plaintiffs, George W. Shawhan, aged twenty-one years, Sarah E. Shawhan, aged eighteen years, and Hannah O. Shawhan, aged seventeen (who sues by her next friend, George W. Shawhan), are children and heirs at law of Benjamin P. Shawhan, who died intestate, May 1, 1852, seized of said lands. The relief asked is the recovery of said realty, which is in the possession of defendant, and $300 damages for rents and profits. By an amended petition, James E. Philip, executor, and Emanuel Loffer, are made defendants.

The answer of the defendant, Henry Loffer, avers that he has been, for thirteen years, in possession of the lands, and claims that the action is barred by the statute of limitations. It also sets out, at length, the title under which the land is held by him, being acquired through an administrator's sale, in a proceeding had in the County Court for the purpose of setting apart the dower of Maria A. Shawhan, the widow of said Benjamin P. Shawhan, deceased. It is shown that a part of the lands have been conveyed to the parties made defendants by the amended petition. The answer claims that the action is also barred, because defendant's title is based on an administrator's deed, and more than five years had elapsed after the administrator's sale, and before the commencement of the suit.

The cause was tried by the court, without a jury, and judgment rendered in favor of plaintiffs, Sarah E. and Hannah A., for one-ninth each, of the lands and $266$\frac{64}{100}$ damages. Judgment was rendered against

plaintiff, George W. Shawhan. Both plaintiffs and defendant appeal.

From the bill of exceptions, it appears that the cause was submitted to the court on the following facts:

Benjamin P. Shawhan died, May 8, 1852, seized of the lands in controversy, leaving, surviving him, the following named children, of the respective ages below stated, viz.: Joseph Henry, aged twenty-eight years; Daniel William, aged twenty-six years; Evaline E., twenty-five years; George W., aged twenty-four years, in January, 1867; Sarah Elizabeth, nineteen years, April 5th, 1867, and Hannah O., seventeen years, January 14, 1867 — the three last named, plaintiffs in the suit; that defendant was in the possession of the lands, and that the rents and profits thereof for the six years prior to the commencement of the suit were worth the sum of $266. This was the evidence for the plaintiff.

The defendant, to support his title to the land, introduced the following evidence:

*First.* The deed of Joseph Lowe, executor of the estate of Benjamin Shawhan, deceased, conveying to defendant, Peter Loffer, for the consideration of $1,500, the lands in controversy, being 320 acres. The deed bears date July 6, 1855, and appears to have been properly acknowledged on that day; it bears, of the same date, an indorsement of approval of the county judge, "in consideration of the regularity of all prior proceedings concerning the sale of the above described realty."

*Second.* The record book of the County Court, containing the following papers and proceedings, viz. :

1. The petition of Hannah A. Shawhan, filed May 10, 1852, asking the appointment of referees to set off her dower in the lands in controversy, to which she is entitled as widow of said Benjamin P. Shawhan, giving proper and particular description of each tract.

2. The record entry of the filing of said petition, describing properly the lands, and the order fixing the first Monday (6th day) of June, as the day for the hearing upon the petition, and this further order, viz. : "personal notice is required to be served on Mills S. Reeves, the executor of said estate, one notice to be posted up at court-house in Lancaster, and one notice at Sigourney, in said county."

3. The record entry of the action of the court on the day fixed (June 6th), which directs the dower of the widow to be set apart by metes and bounds, and appoints referees for that purpose.

4. The commission or precept, addressed to the referees by the county judge, directing them to admeasure the widow's dower in the lands of the decedent, particularly describing the same, and having indorsed thereon the proper oath of referees duly administered to them.

5. The report of the referees, setting out, that they had made examination of the lands, and found, that the dower could not be set apart without great injury to the property, stating, also, other reasons why it should not be admeasured, and returning an appraisement of each tract of land, amounting in the aggregate to $1,275. Upon the report appears an indorsement of the county judge confirming the same.

6. The record entry of the appraisement of the referees, and the approval and confirmation of their report by the court, with an order for the sale of the lands by the executor.

7. The commission or precept, directing and authorizing the executor to sell the lands which are particularly described therein, dated July 15, 1853.

8. The report of the sale of said lands by the executor, Mills S. Reeves, for $1,500 ; a part of the purchase-money to be in deferred payments, and a deed to be made at the

last payment, November 3, 1854. The report was filed November 8, 1853.

9. Record entry, of date July 6, 1855, of the approval by the court of the deed made by the executor, Joseph Lowe, of the lands in question, to Henry Loffer. It recites, that, "in consideration of the regularity of all the proceedings, in relation to the sale and conveyance of the above described lands, the aforesaid deed is hereby approved; and a certificate of approval bearing even date herewith is attached to the same."

10. Record entry dated March 24, 1855, of the appointment of Joseph Lowe, executor, in the place of Mills S. Reeves, resigned, and of his qualifying by giving bonds and taking proper oath.

11. An original notice, proved by the county judge to be one of the papers found in his office, and pertaining to the executor's sale of said land. It is addressed as follows: "To all interested in the estate of Benjamin P. Shawhan," and states, that the widow, Maria Ann Shawhan, has filed her application in the County Court, asking her dower in the lands of said estate to be set apart by metes and bounds, and that the application is set for hearing on the first Monday in June, 1853. It is dated May 10, 1853, and served upon the executor, accepted by proper indorsement, on Monday.

*Third.* It was proved by parol testimony (plaintiffs objecting thereto), that copies of the said notice were posted at the places directed, by the order of the County Court, on the 10th day of May, 1853, and on the same day it was read to the family of the deceased, all the children believed to be present when it was so read, and that it was served also on the executor, acceptance of service being made by him in writing upon the notice.

*Fourth.* Defendant proved, that he went into the possession of said lands May 1, 1854, under the title he acquired

Shawhan v. Loffer.

by his purchase of the same from the executor, and has been in the quiet and peaceable possession thereof since that time; that he has paid all the taxes assessed against said lands, since he has been in possession thereof, and that the price he paid therefor was as much as they were worth at the time of his purchase.

It is believed that the above is a correct, as it is a full, statement of the substance of the pleadings and evidence.

*G. D. Woodin* for the plaintiffs.

*Mackey & Harned* for the defendants.

HARVARD LAW SCHOOL LIBRARY.

BECK, J. — Although the principles involved in this class of cases are well settled by frequent decisions, it is not at all strange that we are so often called upon to apply them in the adjudication of titles. It is accounted for by the great and often rapid increase in the value of lands. An executor or guardian, in good faith and, as it seemed at the time, for the best interests of all concerned, was empowered to sell the lands of the estate or of his ward. The lands were of inconsiderable value and were sold for what was, at the time, a fair and honest price.

A few years increases their value many hundred per centum, and, by the erection thereon of valuable buildings, and the planting of fruit and ornamental trees, what was unproductive and uninviting prairie of little value, becomes a beautiful and enticing farm, a fortune to its possessor. It is not wonderful that heirs and wards arriving at majority, and seeing property once their's, now of such great value and so inviting, should be anxious to find something in the proceedings under which their property was sold that will render the sale void and restore to them the lands which they are ever ready to believe were unlawfully taken from them.

It is not pretended in the case at bar, that, in the sale of the lands in question, there was fraud or any improper practice on the part of the court, the executor, the purchaser or any one concerned. The sale was made in good faith, for a price equal to the real value of the lands, for reasons appearing sufficient and for honest purposes. It is to be presumed that the money paid for the portions of the land claimed by plaintiffs was properly applied for their education and sustenance, or paid to them as they became of age.

There is no pretense, that the thing which equity and the law does most abhor — oppression of the fatherless infant — was attempted toward them. They rely upon rigid, unrelenting rules of law, and sternly, coldly, seek advantage through them, over upright dealings and honest purposes of others. While the rules of law cannot be deviated from, even to avert such results, yet it may be said, to the honor of our system of jurisprudence, they seldom lead thereto.

In proceeding to examine the objections made to the validity of defendant's title, they will be noticed, not in the order in which they are made in the argument of the attorney presenting them, but in that order in which, it would seem, they naturally arise.

1. It is urged, by plaintiffs, that the County Court had no authority, under the Code of 1851, to set apart or partition dower; that, inasmuch as the District Court had jurisdiction in such cases, and no power was expressly given by statute to the County Court, which was a court of limited and inferior jurisdiction, the jurisdiction of the District Court was exclusive. We are clearly of opinion, that section 1394 conferred the power upon the County Court. It provides, that dower shall be set apart by the executor "under the direction of the court." What court is

1. Dower: admeasurement of under Code of 1851.

meant? Evidently the County Court. The context clearly indicates this. The chapter in which this section is contained, treats of the powers and duties of the County Court. It was the only court clothed with power to *direct* the executor in the discharge of his duty. The sections immediately following the one under consideration give minute direction as to the manner of setting apart the dower, which, in some respects, would have been quite unnecessary had it been the intention of the legislature, that the District Court should have executed the power. The fact of the County Courts having uniformly exercised the jurisdiction, and no question as to their right so to do has ever before been made, should have some weight in determining in favor thereof. The jurisdiction of the County Court to admeasure 'dower under the Revision, sections 2477 and 2426 to 2435, which are (except section 2477), a reprint of corresponding provisions of the Code of 1851, is recognized in *Starry* v. *Starry* (21 Iowa, 254). It will be remarked, that section 2477, of the Revision, uses language conferring power upon the court and executor to set apart dower, copied from section 1394, of the Code of 1851. We hold, therefore, that the County Court did have jurisdiction to admeasure dower.

II. It is contended, that the County Court had no jurisdiction of the subject-matter whereon it was called to 2. — repeal of act, because no petition was filed which would statute : effect on proceedings call into exercise the power of the court. commenced. It is admitted, that a petition, which appears in every respect sufficient, was filed May 9, 1853, but its effect is attempted to be destroyed by the following argument :

The referees made their report June 16, 1853, the order to sell was made July 13, 1853. Sections 1394 and 1404 were repealed July 1, 1853, without any saving

clause preserving suits and proceedings already instituted. The order to sell was made under the law of July 1, 1853, and under that law no petition was filed. That there should have been a new petition filed under the law of 1853 is the conclusion arrived at by plaintiff's attorney.

The ready answer to this is, that, under section 26 of the Code of 1851, the repeal of the sections in question did not affect the right of the widow to dower as provided therein, nor the proceedings commenced to set it apart thereunder. The right as well as the remedy survived. See *Innskeep* v. *Innskeep*, 5 Iowa, 204; *Burk* v. *Barron*, 8 id. 135.

The petition of May 9, 1853, gave the court jurisdiction of the subject-matter, concerning which its powers were invoked, which was not lost by the repeal of said action.

III. It is claimed, that the County Court did not acquire jurisdiction of the persons of the plaintiffs in this

3. JURISDIC- suit, because it is not shown in the record,
TION : defec-
tive notice and that notice was personally served on them,
service : col-
lateral attack. and because it appears they were not made parties by name to the proceedings. The decisions of this court, in cases involving principles applicable to this point, are uniform in recognizing the doctrine, that if it appears there was a notice, though it be defective, or the service thereof be imperfect, neither, in strict compliance with the directions of the statute, and the court determined in favor of the sufficiency of such notice and service, which is shown upon the record, even though such determination was erroneous, the judgment of the court will not be held void in a collateral proceeding. It is competent for the court to determine the sufficiency of the notice and service.

If such determination be erroneous, it should be corrected by appeal, and cannot be reserved as a ground of attack upon the judgment in a collateral proceeding.

*Cooper* v. *Sunderland*, 3 Iowa, 114; *Morrow* v. *Weed*, 4 id. 77; *Wade* v. *Carpenter*, id. 361; *Little* v. *Sennet*, 7 id. 324; *Frazier* v. *Steenrod*, id. 339; *Long* v. *Burnett*, 13 id. 28; *Pursley* v. *Hays*, 22 id. 11.

Admitting, that the heirs should have been made parties by name, and that the notice should have been so addressed to them, yet, as the sufficiency of all the proceedings was determined by the County Court in the final order or decree, the objection cannot be urged in this collateral action.

It appears, that a sufficient application was filed by the widow in the County Court, averring sufficient facts to call into exercise the power conferred by law on that court; and that there was a notice and service thereof; the court solemnly adjudged, in the final decree approving the deed of the executor, that all the proceedings were regular, and this was a matter properly before the court at that time for adjudication, and of which it was competent to adjudicate. It was the duty of the court, then, to inquire whether the proceedings the law required were regularly had. It adjudged they were. Exercising presumptions in favor of the regularity of the proceedings of the court, they must be taken as regular and sufficient, and the decree of the court ordering a sale of the lands, and finally confirming the deed, considered as an absolute verity, not to be contradicted or impeached.

It is quite unnecessary to quote authorities which sustain the principle, that proceedings of courts of general

5. —— courts of inferior and superior jurisdiction.

and superior jurisdiction, unless upon their face manifestly void for want of jurisdiction, cannot be collaterally contradicted or impeached, and must be taken as conclusive. This doctrine is nowhere denied, and it is also an admitted principle, that, in the case of an inferior court, if the jurisdiction sufficiently appear, its judgments and decrees stand upon

the same footing as those of superior courts. : *Cooper* v. *Sunderland*, 3 Iowa, 125, 126 ; 1 Smith's Leading Cases ; Hare and Wallace's notes, 703 and 710.

The foregoing principles applied to the facts, as presented by the record, are decisive of this case.

Many objections are made and urged against defendants' title ; all are disposed of by the application of the above general doctrines.   Inasmuch, however, as they are presented with apparently great confidence and urged with ability, and their disposition may, in a degree, aid to settle the law concerning this class of judicial sales (a result very much to be desired), notice will be made of some of the more important ones.

It is contended that the notice provided for under section 1398, Code of 1851, should have been in writing, served personally upon the heirs, and proof of such service made by affidavit.   Sections 2493 and 2428, Code, 1851, are relied upon to sustain this view.   The first named section directs, that, " when not otherwise provided, notices required by law must be in writing and served as herein after provided," personal service being directed by the following section of the chapter.   The other section directs, that the posting up or service of any notice or other paper required by law may be proved by affidavit of any competent witness attached to a copy of said notice or paper, and made within six months of the time of such posting up."   Without determining, that, under the provisions of these sections, the notice contemplated in section 1398 was required to be personally served, it is clear that the proof of such service was not necessarily confined to a written affidavit.   The object of this section is not to make an affidavit the exclusive means of proving a service, but simply to provide that such proof shall be sufficient. Were the view taken by plaintiffs' attorney correct,

*Marginal note: 6. —— proof of service : construction of statute.*

such service could only be proved in the manner pointed out in the section. The returns of officers, the written admissions of parties, and many other proper ways of showing service, would be insufficient proof thereof. We cannot hold such to be the meaning of this provision. When the question was before the County Court as to the proper service of the notice upon the heirs, it was competent to prove the same, by the oath of a witness, or in any other way recognized by the rules of evidence. If the benefits of presumptions in favor of the regularity of the proceedings of courts are to be extended in this case to the record of the County Court, it will be presumed that proper proof of such service was made. On the other hand, if the County Court is a court of limited and inferior jurisdiction and no such presumptions can be indulged, yet, as the service of the notice is not required to be entered of record, it might not be difficult to show that it would be proper to prove the same *aliunde*, as was done on the trial in the court below. 1 Smith's Leading Cases (Hare and Wallace), American Notes on case of *Crepps* v. *Durden*, 703, and 2 Philips on Ev. (Cowen and Hill's and Edwards' notes) 157, 158; *Cooper* v. *Sunderland*, 3 Iowa, 127; *Harrington* v. *Brown*, 5 Pick. 519; *Saltonstall* v. *Riley*, 28 Ala. 169.

It is urged that the record does not show that Reeves, who acted as executor at the time of the appointment of 7. EXECUTOR AND ADMINISTRATOR: appointment presumed. the referees and when the sale was made, had been appointed by the court. The record of his appointment is not given, but he is referred to and mentioned throughout the record of the County Court as the executor; he makes a report of the sale as the executor, and he finally resigned as such. Surely all this is *prima facie* sufficient to satisfy us that he was in fact the executor, duly appointed, and, being so recognized by the County Court, there can be no

doubt, this not being a jurisdictional question, that the rule, *omnia praesumunter rite esse acta*, will preclude denial of the fact here.

It is claimed, that, inasmuch as, upon the resignation of the executor Reeves, an executor *de bonis non* was

8. —— resigna-
tion: power
of successor.
appointed, who executed the deed, it is, therefore, void, because an *executor de bonis non* can only be appointed upon the death of a former executor, and that there is no privity between the first executor and the executor *de bonis non*. The record of the County Court, in the decree appointing the executor Lowe (after the resignation of Reeves), denominates him executor *de bonis non*. Without examining what the law may be elsewhere, we are clearly of the opinion, that, upon the resignation of the executor, the person appointed to the office as successor, whatever may be the peculiar designation applied to him, succeeds to the duties and obligations, as well as the powers of the first executor, and can complete the performance of the duties and discharge of obligations first assumed by the original executor, without delay or interruption. Such seems to be the provisions of sections 1307 and 1308 of the Code of 1851. This doctrine was recognized in *Wade* v. *Carpenter et al.* (4 Iowa, 361).*

It is quite unnecessary to consider other objections made to defendant's title, as the case is disposed of upon the doctrine above announced. Neither is it necessary

---

* It is not improper to remark, for the benefit of the reader who may not be familiar with our statutes, that, by a provision of the Code of 1851, section 26, the term "executor" is extended to and includes administrator, and is so generally used. This peculiarity was copied into the Revision of 1860.

It must be confessed that the wisdom and necessity of dispensing with the use of a word so well understood as the term "administrator," and destroying the meaning of the other equally familiar word, "executor," has never been satisfactorily explained. The peculiar pride of the law as a science is its possession of terms enabling an exact, direct and concise expression of ideas. This statutory innovation in the language of the law is without any known benefit and attended with much inconvenience,

to discuss the effect of the statute of limitations in its application to the case at bar, nor the special limitation provided by section 1356, of Code of 1851, for actions to recover real estate sold by executors, which is so ably discussed in *Pursley* v. *Hays* (22 Iowa, 11).

The judgment of the court below will be reversed as to the decision against defendants, and in favor of plaintiffs, Sarah E. and Hannah O. Shawhan, and affirmed as to the decision in favor of defendant and against George W. Shawhan.

A *procedendo* will issue accordingly.