G. D. ELLYSON, Administrator, v. R. T. C. LORD, Defendant, and GEO. A. JEWETT and WILLIAM MILLER, Appellants.

Estates of decedents: RECOVERY OF ASSETS: ACTION BY ADMINISTRATOR.
1  Where an estate has not been fully settled, the fact that the funds in the hands of the administrator are for the purpose of paying annuities under the will, will not preclude a succeeding administrator from maintaining an action against the former and his bondsmen to recover the same.

Administrators: LIABILITY OF BONDSMEN. In the absence of a specific
2  approval by the court, retention by an administrator of funds of an estate set apart for the payment of annuities will not relieve the administrator's bondsmen from liability therefor.

Administrators: PARTIES. An administrator is the proper party to
3  bring an action against his predecessor and his bondsmen to recover the funds of the estate, although the same may have been devised to the heirs subject to the payment of annuities.

Liability of administrator's bondsmen: ESTOPPEL. Where the court
4  has approved the sale of real estate to pay the legacies and annuities and the proceeds have become a part of the estate, the sureties on the administrator's bond who became such charged with knowledge of the sale, cannot be heard to say, in an action by a succeeding administrator to recover the same, that such fund was derived from an unauthorized sale and not a part of the estate for which they were liable on the bond.

Administrators: LIABILITY OF BONDSMEN. Where a decedent makes a
5  disposition of the entire estate, and the sole purpose in appointing an administrator is to carry out the provisions of the will, his bondsmen are charged with notice of that fact, and in a suit by a succeeding administrator to recover the assets of the estate, cannot be heard to say that their principal owed no duty to the estate; nor can a mere irregularity in his appointment be taken advantage of by the sureties.

Trusts: ADMINISTRATORS: LIABILITY OF BONDSMEN. Where a will
6  contains simply a general direction that the executors shall set apart and invest such a sum as will produce specified annuities, with no special power in respect thereto to be exercised independent of the court, no personal trust is reposed peculiar to the executor

named or that may be appointed, but he takes the fund in his official capacity and his bondsmen are liable for his defalcation.

**Same.** An administrator charged with the investment of a fund cannot relieve himself and sureties from liability until the investment is actually made.

**Liability of bondsmen.** An administrator's bond providing for a discharge of his duties as such and an accounting for all funds coming into his hands, obligates the sureties for funds received by him before as well as after the bond is executed.

**Liability of bondsmen: INTEREST.** Upon the entry of an order that an administrator account and pay over funds in his hands, his liability is fixed, and the same becomes a debt of his sureties, and when the amount due exceeds the penalty of the bond, judgment should be entered for the full amount thereof with legal interest from that date.

*Appeal from Polk District Court.*— HON. W. H. McHENRY, Judge.

TUESDAY, MAY 3, 1904.

ACTION by plaintiff, as administrator, against the defendant Lord, his predecessor as administrator, and the other defendants as sureties on Lord's bond, to recover the assets of the estate for which Lord has not accounted. No defense was made in behalf of Lord. There was a trial to a jury on the issues raised by the answer of the sureties, and judgment was rendered in favor of plaintiff on a directed verdict for the amount of the bond on which defendants were sureties, four thousand dollars, with six per cent. interest from the date of the appointment of plaintiff as administrator, making a total of $5,164. The sureties appeal.— *Affirmed.*

*Dudley & Coffin,* for appellants.

*Miller, Wallingford & De Graff* and *Bowen & Brockett,* for appellee.

McCLAIN, J.— Harriet L. Brainard died in 1892, leav-

ing a will, which was duly probated, by the provisions of which the executor was directed, after paying claims against the estate, to give to Andrew Brainard, brother of testatrix, an annuity of three hundred dollars, and to Kate Wood, a sister of testatrix, an annuity of one hundred dollars; and to divide the balance of the estate, after the death of the annuitants, between George A. Brainard and Louisa Dallas, brother and sister, respectively, of testatrix. It was further provided in the will that the executors should " set apart and safely invest such sum as will, in their opinion, produce such sum "; and Louisa Dallas is named as executrix. Louisa Dallas not consenting to serve by reason of nonresidence, on her application Harrison Welch was appointed administrator of the estate of deceased. Subsequently, on the application of George A. Brainard, Welch was removed, his final account as administrator having been approved, and the defendant Lord was appointed, the order for his appointment being dated October 26, 1893. In pursuance of this appointment, Lord gave a bond in the sum of ten thousand dollars, with approved sureties, and filed an inventory, but it nowhere appears in the record that he gave notice of his appointment, as required by Code, section 3304 (which contains substantially the same provisions as those in force at the time); nor does it appear that his predecessor, Welch, had given such notice. In March, 1894, Lord, as administrator, filed his petition for interpretation of the will of deceased, in which he recited the ownership by deceased of certain described tracts of real estate, stated that the personal estate was not sufficient to provide a fund for the payment of the annuities provided for in the will, and prayed that the sale of the real estate described be ordered and confirmed, and the names of all the heirs of deceased be ascertained and their rights defined in and to said estate. On the same day the court entered a decree finding that the heirs of deceased had all been notified of the application, and decreeing that the real estate be sold on the terms mentioned in Lord's petition, and ap-

proving such sale, empowering Lord, as administrator, to convey all interest, right, and title of their heirs therein to the purchasers.   And it was further ordered that the administrator, after selling all the property belonging to the estate of deceased, and collecting all debts due, set apart a sufficient sum to pay from the interest derived from the same the annuities mentioned in the will, which sum thus set apart should, at the death of said annuitants, become the property of George A. Brainard and Louisa Dallas, share and share alike, and that any balance of the estate remaining after setting apart said sum and paying the claims and expenses of administration should be paid, share and share alike, to the same persons.   In April, 1894, the conveyances of the real estate previously provided for were confirmed.   In June following, George A. Brainard applied for an order on Lord, as administrator, to require him to carry out the orders of the court as to setting aside the fund from the proceeds of which the annuities should be paid, and to make report of his action, and, pending proceedings on this application, Lord executed another bond, in the sum of four thousand dollars, with defendants Jewett and Miller as sureties, conditioned that said Lord would " truly, faithfully, and honestly discharge all the duties and perform all the trusts committed to him as administrator of the estate of Harriet L. Brainard, late of Polk county, deceased, who died testate, and render to the district court a true and just account of said administration when thereunto required."   Before the signing and approval of this bond, and at the suggestion of the judge before whom the matter was pending, the following words were added thereto:   " This is an additional bond to one already given in the case of ten thousand dollars, and approved."   In the following November, Lord, as administrator, filed a report, showing a balance in his hands of six thousand three hundred and seventy-three dollars and five cents, and thereafter an order was entered approving this report, as against the objections of George A. Brainard, " and the action of the ad-

ministrator in setting aside the sum of eight thousand dollars for the purpose of providing the annuities provided in the will of Harriet L. Brainard, deceased," was approved and confirmed. In November, 1897, the resignation of Lord as administrator was accepted by the court, and the plaintiff in this case was " appointed administrator of the estate of the said Harriet L. Brainard, deceased, with direction that Lord, and any and all other persons having in their possession property belonging to the estate, turn over, transfer, and deliver the same to said Ellyson as administrator, and that said Ellyson, as administrator, secure and collect all of the assets belonging to the estate, and make report thereof." It is conceded that defendant Lord has failed to account for the property of the estate in his hands, and that he was at the time of the appointment of Ellyson as administrator, and has continued to be, in default to the extent of more than four thousand dollars, the sum named in the additional bond signed by Jewett and Miller as sureties, on which the present proceeding is based; and the first question for determination is as to the liability of these sureties on such bond for the defalcation of their principal.

With reference to their liability on the bond, the sureties contend that the plaintiff is not the real party in interest; that they are not liable for maladministration of their principal in executing the provisions of the will with reference to setting apart and administering the fund from the proceeds of which the annuities were to be paid; that their principal, as administrator, did not have, by virtue of his office, the right to sell the real estate of the deceased, and that they are not liable for his failure to account for the proceeds of such sales; and that their principal had converted the assets of the estate to his own use, and did not have on hand such proceeds at the time the bond in suit was executed, and received no assets of the estate subsequently to that time for which he has not accounted. We will proceed to a discussion of the legal questions raised by these contentions.

I. The contention that plaintiff, as administrator, is
not the real party in interest, and therefore cannot maintain
this suit, is predicated upon the assumption that the assets

1. RECOVERY OF    of the estate set apart as a fund from the pro-
ASSETS: action   ceeds of which the annuities should be paid,
by admin-
istrator.        and which, on the death of the annuitants, are
to be divided between the two heirs named in the will, are no
longer a portion of the estate, but constitute a trust fund, and
that Lord can be held to account only to the annuitants and
the heirs entitled to the fund after the annuities have ceased.
But there are several sufficient answers to this contention.
In the first place, there is no showing that Lord ever gave
notice of his appointment, and therefore it does not appear
that his duties as administrator with reference to the payment
of claims have terminated, and until all just claims against
the estate have been paid he cannot say that any fund in his
hands was finally set apart, nor has he ever been discharged
from his duty to keep the assets of the estate subject to the
payment of any claims which may be presented.    Perhaps
it may be said that, so far' as the record shows, there are no
claims against the estate.    But it does not follow that claims
may not be filed, and, until the statutory period for filing
claims has commenced to run by reason of the giving of
notice, and has expired without claims being filed, the court
cannot know that the estate is not indebted.    So long as the
opportunity for filing claims is open, the administrator is
bound to preserve the assets of the estate to meet any claims
which may be filed.

It is contended, however, for the appellants, that the
lower court approved the setting aside of a fund of eight
thousand dollars, and that, as to the fund thus set aside,

2. ADMINISTRA-    Lord's liability on his administrator's bond was
TORS: liability
of bondsmen.     thereby terminated.    The difficulty with this
argument is that no such fund was in fact ever set apart or
invested.    Perhaps we should construe the finding of the
court as an authority for paying out the annuities, that is,

as a finding that the assets of the estate were such as to yield a sufficient amount of interest to justify the payment of the full amount of the annuities from year to year; but the court does not approve any specific investment, and, as a matter of fact, the principal part of the supposed fund remained in the hands of Lord, and was used by him as his own money. Certainly, without a specific approval by the court, we cannot treat the retention of these funds by Lord for his own use as an investment of them which would relieve him from liability therefor as administrator.

But the final answer to the contention for appellants in this respect is that Lord, as administrator, was charged with the duty of preserving the fund from which the annuities were to be paid, as well as all other funds of the estate. The grounds on which this conclusion is based will be more fully explained in a subsequent division of this opinion, but it is sufficient now to say that, if we have correctly reached this conclusion, then there is no room for controversy as to Lord's liability as administrator.

But counsel for appellants argue that, even though Lord may be liable as administrator for this so-called trust fund, his liability is to the beneficiaries, and not to plaintiff as his 3. ADMINISTRA- successor; and they rely upon the case of *Kelley* TORS: parties. *v. Mann,* 56 Iowa, 625, in which it was held that an administrator *de bonis non,* appointed on the death of a widow who had been administratrix of her deceased husband's estate, and who, as such administratrix, had received life insurance money payable to her deceased husband's " legal representatives," could not recover the portion of such money to which the children were entitled by action against the administrator of the widow, inasmuch as the children entitled to the fund could assert their claim directly against their mother's estate. The thought of the court seems to be that it would be useless to put the portion of the fund payable to the children into the hands of an administrator *de bonis non,* when the children, by their guardian, might secure it in

a direct proceeding.    But evidently the reasoning of that case is not applicable here.    The annuitants cannot sue for the fund, as they are only entitled to a specific annuity, payable as provided by the will.    The heirs between whom the fund is to be divided on the extinguishment of the annuities cannot recover, for they are not entitled to the fund until the annuities are extinguished.    The question here is as to the custody of the fund, not the distribution of it.    If it be true that plaintiff, as the successor of Lord in the administration of the estate, is entitled to the custody of this fund, and chargeable with the duty of paying the annuities and distributing the fund after the annuities have been extinguished, then he, and he only, is the person who can maintain this suit.    *Shawhan v. Loffer,* 24 Iowa, 217, 230; *State v. Brown,* 64 Md. 97 (1 Atl. Rep. 410); *Stevens v. Cole,* 7 Cush. 469.    The courts have experienced some difficulty in determining the liability of the sureties on the bond of an administrator *de bonis non.*    It seems to be the English rule, adopted in some States, that such an administrator is appointed only with authority to collect debts and take possession of property which has not been reduced to possession under the preceding administration; and accordingly it is held that such administrator cannot sue his predecessor for assets which have been reduced to possession by the latter and misappropriated.    *Beall v. New Mexico,* 16 Wall. 535, 540 (21 L. Ed. 292).    On similar reasoning it has been held that an administrator *de bonis non* with the will annexed is not chargeable with the payment of legacies.    *Small v. Commonwealth,* 8 Pa. Rep. 101.    According to the authorities in which this view of the liability of such an administrator is entertained, the legatee or distributee must, as to assets which have been reduced to possession by an administrator, look to such administrator for their respective shares of the assets in his possession, and cannot look to a subsequently appointed administrator *de bonis non,* nor hold the sureties of the latter liable.

But we think this rule is predicated upon a view as to the duties of a subsequent administrator, which is not recognized in this State. The term " administrator *de bonis non* " is nowhere used in our statutes regulating the distribution of the property of a deceased person, and while it may have been used by this court in some cases for the purpose of designating an administrator appointed to succeed an executor or administrator who has resigned or been removed, we do not find that it has been anywhere used in such way as to indicate a limitation of the power of such successor strictly to those functions which might be exercised by such an administrator as defined by the so-called English rule. In our Code the provisions as to the powers of executors appointed to carry out the provisions of a will and administrators appointed to distribute the estates of persons dying intestate are included in one chapter (title 17, chapter 2), and it is provided that " the term ' executor ' includes administrator and the term ' administrator ' includes executor where the subject-matter justifies such use " (Code, section 48, paragraph 21). With reference to executors it is provided that, if a person appointed executor refuses to accept the trust, or is removed, and a vacancy is thereby occasioned, letters of administration with the will annexed may be granted to some other person, and the substitution of other executors shall occasion no delay in administering the estate. See Code, sections 3290 - 3292, which are substantially the same as provisions in force when Lord was appointed. There are no specific provisions as to the appointment of a succeeding administrator in case of a vacancy. We think that the manifest legislative intent was to provide for the appointment of a successor in the event of a vacancy, and that the successor has all the powers of his predecessor, and is entitled to receive from his predecessor all the assets of the estate held by him as executor or administrator, as the case may be. *Shawhan v. Loffer*, 24 Iowa, 217. This seems to be the prevailing rule in other States, even in the absence of any express statutory

provisions. Woerner, Administration (2d Ed.), sections 352, 536. In accordance with this view, it has been held that the succeeding executor or administrator may recover from his predecessor the assets which have come into the hands of the predecessor and have not been lawfully paid out or distributed, and that legatees or distributees are not compelled to look to the predecessor for their respective shares in the assets coming into his hands. *Foster v. Wise,* 46 Ohio St. Rep. 20 (16 N. E. Rep. 687, 15 Am. St. Rep. 542); *Dawson v. Dawson,* 25 Ohio St. 423; *Slagle v. Entrekin,* 44 Ohio St. 637 (10 N. E. Rep. 675); *Judge of Probate v. Claggett,* 36 N. H. 381 (72 Am. Dec. 314); *State v. Fulton,* 35 Mo. 323; *Minot v. Norcross,* 143 Mass. 326 (9 N. E. Rep. 662); *Gilliam v. Watkins,* 104 N. C. 180 (10 S. E. Rep. 183); *Tulburt v. Hollar,* 102 N. C. 406 (9 S. E. Rep. 430); *Lansdell v. Winstead,* 76 N. C. 366.

This view was evidently entertained by the lower court when plaintiff was appointed as successor to defendant Lord, for the order of the court was: " That the said R. T. C. Lord and any and all other persons having in their custody, possession, or under their control money, property, or valuable things of whatsoever kind, character, or description belonging to the estate of the said Harriet L. Brainard, deceased, immediately on said G. D. Ellyson qualifying as such administrator of said estate, turn over, transfer, and deliver the same to the said G. D. Ellyson, as the administrator of said estate. That the said G. D. Ellyson, as administrator of said estate, as soon after he shall have qualified as such administrator as is practicable, secure and collect all of the assets belonging to said estate, and prepare and make to this court a full and complete report showing the actual condition of said estate, its assets and liabilities, and all the facts pertaining thereto; and that the said G. D. Ellyson, as such administrator, do all such things and take all such steps as may be necessary in order to secure and collect the assets of said estate, and protect and preserve the same." We reach the

conclusion, therefore, that by law and by the express order of the court it was the duty of Lord to turn over to the plaintiff all the assets of the estate held by him as administrator; that plaintiff may maintain an action against Lord and his bondsmen for the assets of the estate so held by him, and that the objection that this suit is not brought by the proper party is not well taken.

II.   The objection is raised in various forms that the so-called trust fund was not held by Lord as administrator, but that either as the proceeds of an unauthorized sale of the

**4. LIABILITY OF ADMINISTRATORS' BONDSMEN: estoppel.**   real estate of the deceased or as a trust fund which could be held and administered only as trustee, the defendants, as sureties on his administrator's bond, were not liable therefor.   In answer to the contention that this so-called fund was the proceeds of an unauthorized sale of real estate it is sufficient to say that the matter is foreclosed by the action of the lower court in approving the sales and conveyances by Lord.   He admits the receipt of the proceeds of these sales, and it is too late now for his sureties to say that they were not assets of the estate. Moreover, we think that the real estate might properly be sold for the purpose of raising a fund for the payment of legacies and for investment in order to realize the sums necessary to pay the annuities charged upon the estate.   By Code, section 3323, it is provided that, " if the personal effects are found inadequate to satisfy the debts and charges, a sufficient portion of the real estate may be ordered sold " for that purpose.   The legacies and annuities were charges against the estate, and, although the testatrix in her will did not specifically direct the sale of her real estate by the executor, it was evidently contemplated that such sale should be made under the order of the court, if necessary to pay the legacies and provide the fund from the proceeds of which the annuities should be paid.   While it is true that a special bond is provided for when real estate is ordered to be sold, we see no reason why, in the absence of such special bond, the sureties of

the executor are not liable for the proceeds of such sale after they have become a portion of the general assets of the estate. The additional bond on which this suit is brought was given after the real estate had been converted into money and was in the hands of Lord for the purpose of carrying out the provisions of the will, and it is quite apparent that the very object in requiring it was to provide additional security for its preservation and proper use. At the time these sureties signed this bond, they were charged with knowledge of the receipt by Lord of the proceeds of this estate, and the purposes for which it was being held by him. The records in the probate proceedings disclosed all the facts. The sureties cannot now say these funds consisted largely of the proceeds of a sale of real estate which the court had improperly sanctioned. *Evans v. Gerken,* 105 Cal. 311 (38 Pac. Rep. 725); *State ex rel. v. Young,* 125 N. C. 296 (34 S. E. Rep. 444); *Bellinger v. Thompson,* 26 Or. 320 (37 Pac. Rep. 714); *Hooks v. Evans,* 68 Iowa, 52.

In this connection it is necessary to refer to the contention on behalf of appellants that Lord was simply an administrator, and chargeable with no duty with reference to the 5. ADMINISTRA- distribution of the proceeds of the estate under TORS: liability of sureties. the will. It is true that in the order of his appointment and the letters issued to him he is referred to simply as administrator, and not administrator with the will annexed. But the deceased died testate, and her will makes provision for the distribution of all of her estate. Nothing was left to be administered upon. The sole power and function of the court was with reference to the carrying out of the provisions of the will. When Lord was appointed, it must have been understood by the court, and he and his sureties are chargeable with notice of the fact, that his only duties were with reference to the management and distribution of the property in accordance with the terms of the will. In this capacity he received the assets of the estate, and the sureties cannot be heard to say that he had no right whatever nor

duty in the matter.   Moreover, in the additional bond signed
by these sureties the express condition is that Lord "will
truly, faithfully, and honestly discharge all the duties and
perform all the trusts committed to him as administrator of
the estate of Harriet L. Brainard, late of Polk county, de-
ceased, who died testate, and render to the district court a
just and true account of his said administration when there-
unto required."   No mere irregularity or inaccuracy in de-
scribing Lord or his predecessor, Welch, as "administrator,"
instead of "administrator with the will annexed," can be
taken advantage of by these sureties to escape liability for
the acts of their principal under the manifest purpose for
which the bond was given.   *Casoni v. Jerome,* 58 N. Y. 315.
And see *Foley v. Hamilton,* 89 Iowa, 686.

But a further and more serious objection is made that
the duty imposed upon the executor under the will with ref-
erence to the creation and preservation of a fund from the
6. Trusts: ad-      proceeds of which the annuities should be paid
ministrators;       was a personal duty or trust, and that, so far
liability of
bondsmen.           as Lord was acting in this capacity, he was be-
yond the scope of his duty as administrator, and the sureties
on his administrator's bond are not liable for his defalcation
with reference to such funds.   This court has fully recognized
the doctrine that a power involving personal confidence con-
ferred on persons named in a will, even though they be also
designated as executors, cannot be exercised by other persons
appointed by the court to carry out the provisions of the will.
Thus it has been held that a discretionary power to sell real
estate which is given to the person named as executor by rea-
son of personal trust and confidence cannot be exercised by an
administrator with the will annexed.   *Hodgin v. Toler,* 70
Iowa, 21; *In re Van Brocklin's Estate,* 74 Iowa, 412; and
see *Boland v. Tiernay,* 118 Iowa, 59.   But in Mrs. Brain-
ard's will no power to sell was expressly given, nor was any
discretion of a personal nature vested in the executor.   There
is simply a general direction that the executors (in other

clauses the singular is used, and only one person is named as
executor) set apart and safely invest such sum as will, in
their opinion, produce the annuities. There is no indication
of an intention that the person named shall have a power and
discretion in this respect which cannot be exercised under
the direction of the court by a substituted administrator. It
is evident that the executor named could only have exercised
power and discretion under the court's supervision, and that
any exercise of power in this respect must be upon the court's
approval. We think it clear that the executor as such, and
not the person named in the will as trustee, was charged with
the duty, and that it was not the intention of the testatrix to
designate a particular person as trustee to discharge a duty
not intended to be conferred upon the person named or who
might be appointed as executor. Therefore Lord, as admin-
istrator with the will annexed, was charged in his official
capacity, and not as a personal trustee, with the preservation
of this fund; and the sureties on his bond are liable for his
defalcation with respect thereto. This conclusion is support-
ed by *Lees v. Wetmore,* 58 Iowa, 170; *Shawhan v. Loffer,* 24
Iowa, 217, 230. In these cases the power and duty of the
substituted executor or administrator with the will annexed
to perform functions of the executor named in the will where
no personal trust has been conferred is fully recognized. But,
even if the testatrix attempted to create a personal trust, no
such trust was in fact created, and Lord's sureties are not
entitled to the benefit of the rule for which they contend.
Lord did not invest the assets of the estate as a trust fund,
but appropriated them to his own use. The court never ap-
proved any such appropriation. It is true that in overruling
objections to one of the reports of Lord as administrator the
court approved his action in setting aside the sum of $8,000
for the purpose of providing the annuities stipulated in the
will. But we think that this was simply the approval of his
withholding that amount from distribution. The court does
not approve of any investment of the funds which Lord pur-

ports to have made, and his report shows no such investment as to a substantial part of the fund, and it was not in fact invested, but was retained by him and misappropriated. An

7. SAME.

executor charged with the investment of a fund for a particular purpose does not relieve himself and his sureties from liability for the fund so invested until the investment is actually made. Cranson v. Wilsey, 71 Mich. 356 (39 N. W. Rep. 9). In no view of the case can these sureties be relieved from liability for the defalcation of Lord with reference to the money which it was his duty under the will to retain or invest for the purpose of yielding an income from which the annuities should be paid.

III. It is contended that the sureties on this additional bond are not liable for moneys received by Lord and misappropriated prior to the execution of such bond. But by its

8. LIABILITY OF BONDSMEN.

very terms it is evident that no construction could be put on it which would justify such a conclusion. It is not only denominated " an additional bond to one already given," but the condition is that Lord will " truly, faithfully, and honestly discharge all the duties and perform all the trusts committed to him as administrator, * * * and render to the district court a just and true account of his said administration." Such a bond is security for the final accounting by the administrator for all funds coming into his hands during the administration, and it is immaterial whether the funds which he fails to account for were received before or after the execution of the bond. The breach of duty as to which the bond is given as security is the failure to make a final accounting. In this respect the bond of an executor or administrator differs from the bond of a public officer. Scofield v. Churchill, 72 N. Y. 565; Lacoste v. Splivalo, 64 Cal. 35 (30 Pac. Rep. 571); Bellinger v. Thompson, 26 Or. 320 (37 Pac. Rep. 714); Choate v. Arrington, 116 Mass. 552; State ex rel. v. Creusbauer, 68 Mo. 254; Dugger v. Wright, 51 Ark. 232 (11 S. W. Rep. 213, 14 Am. St. Rep. 48). In this State it has been held

that sureties on an additional bond of a guardian are liable for funds already misappropriated, and not finally accounted for. *Douglass v. Kessler,* 57 Iowa, 63; *Knox v. Kearns,* 73 Iowa, 286; *Knepper v. Glenn,* 73 Iowa, 730.

IV. The trial judge, on the concession of counsel for defendants that the amount for which Lord should account exceeded the amount of the penalty in the bond sued on, rendered judgment for plaintiff against the sureties for the penalty in the bond with interest thereon at six per cent. from the date when Lord was ordered to account to plaintiff. Counsel for the sureties now contend that this allowance of interest, amounting to $1,164, was erroneous, and that the judgment should have been limited to the exact penalty of the bond. The matter of allowing interest in excess of the penalty where the liability of the principal exceeds the penalty is one as to which there is considerable difference of view as expressed in the cases relating to the subject. It is unquestionably true that, in accordance with the general principles on which interest is allowed by way of damages in any case, the sureties are bound for interest from the time of default; that is, from the time when they should have made good the delinquency of their principal. This general rule is embodied in the statutory provision that "the rate of interest shall be six cents on the hundred by the year in the following cases: * * * 1st. Money due by express contract. 2d. Money after the same becomes due." Code, section 3038. Construing the language of the bond literally, $4,000 was due thereon when Lord failed to comply with the condition; that is, to pay over the funds in his hands. By the early practice in law courts judgment could then have been taken aginst him and his sureties on the bond for the full penalty, even though his failure to account was as to a much smaller sum. Equity would, however, relieve the principal and sureties from such a judgment upon payment of the amount actually due. Later there was statutory provision by which a court of law in

*Margin note: 9. LIABILITY OF BONDSMEN: interest.*

an action on a penal bond determined the amount of real
damage on payment of which the judgment for the full pen-
alty should be discharged.    This is undoubtedly the usual
method of procedure in States where the common law pro-
cedure still prevails.    Sutherland, Damages, section 470 *et
seq.; New Home Sewing Mach. Co. v. Seago,* 128 N. C. 158
(38 S. E. Rep. 805).

But in States where the reform procedure has been
introduced the fictitious judgment for the full amount
of the penalty where the real damages are less than
the penalty has been abandoned, and judgment is rendered
directly against the sureties for the real damage, not exceed-
ing the penalty of the bond. This rule is recognized by Code,
section 3639.    So far as the principal is concerned, it is
unquestionably true that, when the amount of the damages
is ascertained by judgment, interest should be included from
the time of his breach of duty, although at that time the
amount of his liability had not been adjudicated.    In other
words, the principal is liable for interest on the amount
subsequently found due from the time of his default, although
it was not rendered certain by any judgment.    It was the
principal's duty to ascertain and tender the amount for which
he was liable in order to avoid liability for interest.    But the
contention of counsel for appellants is that as to sureties there
was no obligation to pay until the amount of the principal's
liability was ascertained by an adjudication.    We cannot con-
cur in this view.    It was equally the duty of the sureties as
of the principal to see that the principal paid over the amount
of the funds in his hands for which the bond was given as
security at the time when his duty to pay became fixed by the
entry of an order that he account for and pay over to plaintiff
the funds in his hands.    The amount of his liability could
then be determined by computation, and became a debt of the
sureties as well as of the principal; and, as it now appears
that the amount at that time exceeded the penalty of the
bond, the full amount of the bond became due from the sure-

ties, and they should pay interest from that time. This view is supported by the great weight of authority. *Gloucester City v. Eschbach,* 54 N. J. L. 150 (23 Atl. Rep. 360); *City of Camden v. Ward,* 67 N. J. L. 558 (52 Atl. Rep. 392); *Carter v. Thorn,* 18 B. Mon. 613; *Wyman v. Robinson,* 73 Me. 384 (40 Am. Rep. 360); *Marshall v. Minter,* 43 Miss. 666; *Whereatt v. Ellis,* 103 Wis. 348 (79 N. W. Rep. 416, 74 Am. St. Rep. 865); *Mullen v. Morris,* 43 Neb. 596 (62 N. W. Rep. 74); *James v. State,* 65 Ark. 415 (46 S. W. Rep. 937).

There are cases to the contrary in Michigan, North Carolina, South Carolina, and Missouri, and perhaps other States; but in the first Michigan case on the question, which has been followed in subsequent cases as establishing the rule in that State, there is a dissenting opinion by Judge Christiancy (*Fraser v. Little,* 13 Mich. 195, 87 Am. Dec. 741); and in the recent North Carolina case there is a dissent by Judge Clark (*New Home Sewing Machine Co. v. Seago,* 38 S. E. Rep. 805). The case before us is not one for the recovery of unliquidated damges in the proper meaning of the term. *Whereatt v. Ellis, supra.* The amount for which Lord should account was certain and definite, although it could only be ascertained, for the purpose of rendering judgment, by evidence and computation. But this would be equally true if the obligation had been for the payment of a specified sum on which there had been partial payments. The trial court correctly held that the sureties were liable for interest on the penalty of the bond from the time of breach under the concession that at that time Lord was bound to account for an amount exceeding the amount named in the bond.

The judgment entered by the trial court was correct, and it is AFFIRMED.

BISHOP, J., takes no part.