fiUF:piNj q_ j
 

 The bill must, of course, be dismissed with costs as to the defendant, Patton, who has no interest, real or nominal, in the judgment, and against whom nothing has-been proved.
 

 The other two defendants, Hawkins and Hays, allege as one point of defence, that the plaintiff, after discharging the judgment against Hawkins and himself, came to an account with Hawkins and took from him a note in satisfaction of the balance due to him; and therefore they insist that the present suit cannot be sustained ; not against Hawkins, because from him the plaintiff has taken a new and substantive legal security in satisfaction of the former demand, and not against Hays, because the plaintiff has given- up his remedy against the principal, and thereby discharged the surety.
 

 Plow far the taking of a promissory note from the principal might operate as a satisfaction of the previous debt of the principal or discharge a co-surety, if agreed to be a satisfaction, we need not decide, for although the question is raised in the answers, the defendants have failed to establish the fact by evidence. Two depositions have been taken in reference to this part of the case. The one is that of William Hawkins-himself. But he is incompetent
 
 to prove
 
 a fact,
 
 which, if
 
 it operate at all, must operate to his own discharge in this suit, as Well as that of the other defendant. Besides, there was no order for his examination ; and without that, a party cannot be a witness for another.
 
 Lewis
 
 v.
 
 Owen, 1
 
 Dev. Eq. 290.
 
 Bell
 
 v.
 
 Jasper,
 
 2 Ired. Eq. 597. The other witness is G. W. Candler, who states, that Jones and Hawkins made a settlement,- shortly-before this suit was brought,' in relation to the matter in which, the former was' surety for the latter’s guardianship ;'and that"he, the witness,thinks that in the settlement Hawkins -gavte Jones a note for the balance between them, and that receipts were passed between them; but that he cannot recollect the amount of the note, and he does not know the nature of the receipts given. He states,
 
 *507
 
 that it was his understanding of the settlement, that Jones was to have Hawkins’ land, but at what value he is unable to and that Jones claimed that he had before purchased it at a sale made for other debts, but at what price the witness does not know. No order has been moved on the plaintiff to bring in the note or receipts alleged to have been given to him, nor any notice to him to produce-them before the witness ; and the defendants have declined or omitted to offer the receipts given by Jones to Hawkins, as pretended by them. It would be exceedingly loose to proceed on evidence, of the uncertain character of this witness’ testimony, in respect to the contents of written instruments ; some of which are in the possession of the defendants themselves, or one of them, and the others accessible to them by proper means. It may be, that, in the very receipts given by the plaintiff to Hawkins, it is expressed, that the note of the latter was intended as an adjustment of the accounts and striking a balance, and was not taken in satisfaction of the precedent debt; and that supposition is the less improbable, as the present suit was brought almost immediately afterwards. Certainly, if it should appear hereafter, that the plaintiff actually holds the note of Hawkins in the premises, and should entitle himself to a decree against Hays as a co-surety, Hays would be entitled to participate in the benefit of that security. But at present, as. a bar to the bill, the defendants have failed 'to establish by proper proof that the plaintiff took Hawkins’ note in satisfaction, and not as a collateral security for the benefit of himself and his co-surety equally, or indeed, that he took the note at all; and therefore, the plaintiff’s case depends upon his original equity.
 

 As far as the plaintiff rests his equity on the special agreement of Hays to assume the default of the guardian in his time, or any aliquot.part of the deficit, or to refer it to counsel to adjust the respective liabilities of the parties, the plaintiff must fail, as the whole allegation is denied in the answer, and there is no evidence to overrule the denial. ,
 

 We hold, however, that independent of any agreement upon the subject, the plaintiff and the defendant Hays stand in the
 
 *508
 
 relation of co-sureties for Hawkins, and liable to contribute to each other for any sums paid by one of them on account of defaults of the guardian, no matter when such defaults occur- ** red, whether wholly before Jones became the surety, or after that event. The office of guardian is not for a definite period of three years, or temporary at all, that is to say, within the ■nonage of the ward. The Act of Assembly, Rev. St. c. 54, in the first section, authorises a father to appoint a guardian ■for his child, for such time as he or they shall remain under 21 years of age, or for any less time. The second section confers on the courts of law the power to appoint guardians, where the father has not, and requires them to take good security from the. guardian “for the estate of the orphan by them committed.” Under the act of 1762, the guardian was only required to give bond once for all, at his appointment, unless under the power thereby specially conferred, to make rules from time to time for the better ordering and securing the orphan’s estate, the court should require the guardian to give other and further security, or, unless at tne instance of the sureties of a guardian, the court should compel him to give sufficient other or counter security, or appoint some other guardian. It was, therefore, in its creation, one office for the whole minority of the ward, unless it was expressly for a shorter period, or unless subsequently shortened by an order of removal. The, sureties, given at first, continued through the term, and could be relieved only by the removal of the guardian, or getting counter securities from him, by way of indemnity. But very often the sureties became insolvent, and therefore had no interest in the conduct of their principal, and •took no steps against him, though he was wasting the estate and becoming insolvent. To correct this evil and protect the interest of wards, the act was passed in 1820, “further pointing out the duty of guardians which makes it the duty of guardians to
 
 “
 
 renew their bonds every three years
 
 during their continuance
 
 of the guardianship,” and making it the •duty of the courts to
 
 remove from office
 
 such guardian as may fail so to do, and appoint a successor to him. The case
 
 *509
 
 of a guardian and of his successive bonds, is therefore ly like that of clerks and their bonds ; as to which"it has been held, that the office was not annual, though the bond be given annually, but that all the bonds', given through the several years for which the office continues, are cumulative securities for the performance of the duties of the office, and particularly for the payment of money received at any time before or after the giving a new bond. Oats v. Bryan, 3 Dev. 451. This is expressly the doctrine laid down as to guardian bonds in
 
 Bell
 
 v. Jasper, 2 Ired. Eq. 597. That case came first before the court in the name of
 
 Foye
 
 v. Bell, at law, 1 Dev. & Bat. 475, in which we held that the first sureties were liable to the ward, although, as between the different sets of sureties, the latter might be bound to contribute orto exonerate the former. Whether the one set would be so bound to the other, was not then to be determined. But Bell was compelled to pay the recovery against him at law, and then filed his bill against his co-sureties in the bond, to which he was a party, and also against the posterior sureties in the second bond, for contribution ; and by the whole court it was held, that all the bonds were but securities for the same thing, and, therefore, that there must be a contribution between the different sureties. Each was held bound for the
 
 entire
 
 guardianship; the only" difference between them being, (upon the authority of
 
 Deering
 
 v.
 
 Winchelsea,
 
 1 Cox, 318) that the liability of each was not equal, but in proportion to the penalties of the several bonds, in which the respective sureties bound themselves. Consequently, in this case, the sum for which the defendant Hays is liable, when compared to that the plaintiff ought to pay of the deficit of the insolvent principal, is as $3,000 is to $1,000, and so it must be declared. And it must be referred to the Master to inquire, what sum the plaintiff has been compelled to pay as surety for William Hawkins in the premises, and what payments on account thereof he has received from Hawkins, what balance is due to" the plaintiff in respect thereof, and how the same is secured. And the Master will also inquire, whether Hawkins continues to be insolvent, or is able
 
 *510
 
 to pay tiie balance that may be found due to the plaintiff, or any part of it, and how much, and where he resides.
 

 Per Curiam, Ordered accordingly.