Battle, J.
 

 The bill of exceptions presents-am interesting question of damages which has not hitherto been decided in this State. It has, however, been much discussed in England, and, after some conflict of judicial opinions, seems to be settled there upon just and equitable principles.
 

 For the better elucidation of the subject, it may be proper to give a brief history of-the manner in which the question came to be entertained in a Court of law : and to do this, we need only abridge the clear and accurate account contained in Mr. Sedgewick’s Work on damages. (See chap. 16 of the 2nd edition.)
 

 The obligation or bond- of the English law is either a single one, in the form of a- simple promise to pay money, under seal, or it has a clause appended declaring that the previous obligation shall be void on the payment of some lesser sum, of money, or the performance of some particular act. Tho latter part or conditions of ’ the bond is that which discloses the real nature of the contract,, and contains its essence. The former
 
 *18
 
 part is the
 
 penalty.
 
 Formerly, if the condition was not strictly complied with, as in regard to the payment of money on a certain day, the moment the day was passed, the penalty became the debt, and at law recoverable: and neither payment, nor tender after the day, would avail; because a condition once broken was gone forever. If the condition were to do any other thing than pay money and were not fulfilled, the penalty again became the debt, and was recoverable without any reference whatever to the actual damages incurred. In an action of debt upon the bond for a condition broken, the plaintiff recovered the penalty, and the action could not be relieved against either by payment or tender: no defense would avail but a release under seal. Hence the party was driven for relief to the Courts of Chancery, which interposed and would not allow the plaintiff to take more than, in conscience he ought: holding that the condition of the bond expressed the agreement of the parties, -and that therefore, the defaulter should not be compelled to pay the penalty.- This practice was followed by the common law Courts, which ordered the proceedings to be stayed upon the defendant’s bringing into Court the principal, interest and cost. Finally, this discretionary power was confirmed by the Statute 4th Anne, ch. 16, sec. 12 and 13, which provided that in actions on bonds, with penalties, the defendant might plead payment after the day, or bring in the principal, interest and costs, and be discharged. This Statute has been enacted in this State, and forms the 106th and 107th sections of the 31st chapter of our Revised Statutes. By the.Statute 8 and 9, Will. 3, ch. 2, sec. 8, (which forms the 63rd section of the same chapter of the Revised Statutes,) it had been declared not long before, “ that in all actions, &c., upon any bond or bonds, or on any penal sum for non-performance of any covenants or agreements in any indenture, deed or writing certain, the plaintiff or plaintiffs
 
 may
 
 assign as many breaches as he or they shall think fit, and the jury upon the trial of such action or actions, shall and may assess, not only such damages and costs of suit as have heretofore been usually done in such cases, but also dam
 
 *19
 
 ages for such of the said breaches so to be assigned, as the plaintiff, on the trial of the same, shall prove-to have been broken.” The words
 
 “ may
 
 assign breaches,” have been held to be imperative, and that a judgment obtained under the former practice would be erroneous,
 
 Rose
 
 v.
 
 Rosewell,
 
 5 Term, Rep. 538.
 

 These two Statutes have produced this result, that in the case of an agreement to do, or to refrain from doing, any particular act secured by a penalty, the amount of the penalty is in no sense the measure of compensation : and the plaintiff must show the particular injury of which he complains, and have his damages assessed by the jury.
 

 But there is a class of cases, in which upon entering into an agreement, the parties, to avoid all future enquiries, as to the amount of damages which may result from the violation of the contract, may settle upon a definite sum, as that which shall be paid to the party who alleges and establishes the violation of the contract. In these cases, the damages so fixed upon, are termed liquidated,
 
 stipulated
 
 or
 
 stated
 
 damages. But even when this course has been adopted, the Courts both of Law and Equity will not always hold the definite sum named, as liquidated damages; but if from the words used, and the nature of the contract, they can infer that such was the intention of the parties, they will hold it to be a penalty. If from the nature of the agreement, it is clear that any attempt to get at the actual damages would be difficult, if not impossible, the Court will incline to give the stipulated damages which the parties have agreed on. But if, on the other hand, the contract is such, that the strict construction of the phraseology would work absurdity or oppression, the use of the term “ liquidated damages,” will not prevent the Courts from inquiring into the actual injury sustained, and doing justice between the parties. In the earlier cases on the subject, we may not perhaps be able to deduce any definite rule, but the later decisions will be found to establish the one, which we have stated, and which is extracted from Mr. Sedge wick’s treatise. ’Without examining all the cases on the subject, we will refer to those cited by
 
 *20
 
 tlie defendant’s counsel, which we think are decisive in the case before us. In
 
 Ashley
 
 v.
 
 Weldon,
 
 2 Bos. and Pul. 346, an agreement was- entered into by the defendant, to perform for the plaintiff, at Ms- Theatre,, and attend all rehearsals, or pay the established fines for all forfeitures of any kind whatsoever, with a clause that either of the parties,.-neglecting to perform the agreement, should pay the'other 200 pounds; the declaration averred, a refusal to perform,.and the defendant pleaded
 
 non assumpsit.
 
 On the trial a verdict vías taken for 20 pounds, with leave- to-the plaintiff to enter a'verdict for 200 pounds, if the C'ourt should consider the agreement one in the nature of liquidated damages. Lobd EudoN, then Lord Chief Justice of the Common Pleas, in delivering the judgment of the Court, said, that he had felt much embarrassment in ascertaining the principle of the-decisions,, and that “-this appeared to him the clearest principlethat where- a doubt is stated, whether the sum- inserted bo a penalty or.not, if a certain damage less than that sum is made payable upon the face of the same instrument,, in case the-act intended to be prohibited- be done, that sum shall be construed to- be a penalty;. though the mere fact of the sums being, apparently erroneous and excessive, would not prevent it from, being, considered as liquidated damages.” It was held to be a penalty.
 
 Kemble
 
 v. Farren, 6 Bing. Rep. 141, was a case very similar to the last, differing from it, however, in the use of the terms “ liquidated and ascertained damages, and not a penalty or a penal sum, or in, the nature-thereof.” The defendant had agreed with, the plaintiff to act as principal comedian at Co vent Garden, and.- to. conform to-its rules; the plaintiff was to pay 3 pounds, 6 shillings and 8 pence, every night that the theatre should be open; and the agreement contained a clause that if either party failed to- ful-fil his agreement, or any part thereof, or any stipulation therein contained, such party should pay the other the sum of 1000 pounds, to which sum it was agreed that the damages should amount, and which sum was declared by the parties to be li-liquidated damages, and not a penalty or penal sum, or in the nature thereof: The breach alleged was a refusal to act during
 
 *21
 
 the second season, and the jury gave a verdict for 750 pounds. A motion was made to increase the verdict to 1000 pounds, on the ground that that sum was the amount liquidated by the parties. The motion was denied, and the reasons for it were clearly and explicitly stated by the Chief Justice TiNdal. This case was distinctly recognized by the court of Exchequer., in
 
 Hamer
 
 v.
 
 Flintoff,
 
 9 Mees. and Wels. 678, where the sum named was held to be a penalty : PaeKe, Baron, saying “ the rule laid down in
 
 Kemble
 
 v.
 
 Farren
 
 was, that when an agreement contained several stipulation's of various degrees of importance and value, the sum agreed to be paid by the way of damages for the breach of any of them, shall be construed as a penalty, and not as liquidated damages, even though the parties, in express terms stated the contrary. When parties sa3r that the same ascertained sum shall be paid for the breach of any article of the agreement, however minute and unimportant, they must be considered as not meaning exactly what they say, and a contrary intention may be collected from the other parts of the agreement.” The same rule was again sanctioned in the subsequent case of
 
 Green
 
 v. Price, 13 Mees. and Wels. 695, though for the reasons therein stated, it was held not to govern that case. The defendant there had contracted not to practice as a performer within a certain district, and to insure the performance of his agreement, had bound himself to the plaintiff, in the sum of 5,000 pounds, “ as and by way of liquidated damages, and not of penalty.”
 
 Kemble
 
 v.
 
 Farren
 
 was cited for the defendant, but the Court said, “ where the deed contains several stipulations of various degrees of importance, as to some of which, the damages might be considered liquidated, whilst for others, they may be deemed unliquida-ted, and a sum of money is made payable on a breach of any of them, the Courts have held it to be a penalty and not liquidated damages. But when the damage is altogether uncertain, and yet a definite sum of money is expresslj1, made payable in respect of it, by way of liquidated damages, those words must be read in the ordinary sense, and cannot be construed to import a penalty.” This cause was affirmed on a
 
 *22
 
 writ of error to the Exchequer chamber, when TcNdal, 0. J., who had decided
 
 Kemble
 
 v.
 
 Farren
 
 was present. See
 
 Price v.
 
 Green, 16 Mees. and Wels. Rep. 346.
 

 The principle of the rule has been recognized in the Supreme Court of the United States, and in the Courts of many of the States. See
 
 Tayloe
 
 v.
 
 Sandiford
 
 7, Wheat. 13;
 
 Dakin v. Williams
 
 17, Wend. Rep. 447; S. C. in Error 22, Wend. 201, and the cases in other States in a note to 419 page of Sedgewick on Damages, (2nd Ed.)
 

 Let us now apply the rule, which we have thus deduced from the cases, to the one before us. The defendant in consideration of his purchase from the plaintiff of one half of the schooner, John F. Davenport, covenanted to do three things: 1st, to pay one half of the debt due by the plaintiff, tó Doyle, Durvin & Eudder, such half amounting to $675: 2ndly, to pay off a note due from plaintiff to Casey & Davis for $720 : and 3rdly, to permit the plaintiff to redeem the half of the vessel, by repaying these sums with interest, at any time within three years from the sale : and if he failed to comply with these terms, he agreed to pay the plaintiff $2,500 as liquidated damages. It is manifest that if the defendant had failed to pay both, or either of the sums which he agreed to do, he would hav'e broken the covenant as effectually, as he did by failing co reconvey. If. the sum agreed on by the parties, is to be construed liquidated damages, as the terms import, then the defendant will be bound to pay a greater sum for a less; which cannot be, as that, according to all the cases, is a penalty. The sum, too, agreed to be paid by the way of damages, is for the breach of any of the stipulations which are of different degrees of importance and value, and so comes directly within the rule laid down in the cases to which; we have referred. Nor is the damage for the breach assigned, to wit, the non-reconveyance of a half of the schooner in question, so entirely uncertain as to bring the case within the rule of stipulated damages. We have not learnt that the half of the schooner was of such peculiar value to the plaintiff, as to make altogether uncertain his damage for the defendant’s failure to re-
 
 *23
 
 convey it to bim. The charge of his Honor in relation to the damage was right, and the judgment must be affirmed.
 

 Pee CukiaM. Judgment affirmed.