R. M. STAFFORD, Adm'r, v. JONES BROTHERS.

*Mortgage, construction of—Interest.*

Where a mortgage is made to indemnify one against loss by reason of becoming surety upon a note executed to negotiate a loan to carry on business, and the mortgagor makes default; *Held*, that while a provision in the deed rendering the property liable for "no more than $5,000" is a limitation upon any increase of the debt, yet interest is recoverable as an incident to the debt.

(*McNeely* v. *Carter*, 1 Ired., 141; *Dwiggins* v. *Shaw*, 6 Ired., 46, cited and approved.)

CIVIL ACTION to foreclose a mortgage, heard at July Special Term, 1884, of GUILFORD Superior Court, before *Graves, J.*

The suit was brought by R. M. Stafford and W. M. Houston, administrators of Seymour Steele, against Jones Brothers and Manfred Call, to foreclose a mortgage, of which the following is a copy:

*Whereas,* Seymour Steele has become the security for the payment of the sum of five thousand dollars to the National Bank of Greensboro upon a certain promissory note dated the 1st day of June, 1876, and payable twelve months after date, signed by Jones Brothers as principal and the said Steele as security; and *whereas,* the said Jones Brothers, a firm consisting of E. P. Jones, J. L. Jones and J. P. Jones, are engaged in the business of manufacturing and working tobacco in the factory hereinafter described, for which factory the said Jones Brothers have contracted with the party of the first part hereinafter named, and by whom the said factory and premises connected therewith is owned, and who for the purpose of assisting and enabling the said Jones Brothers to carry on their said business of manufacturing,

hath agreed to mortgage the said factory and premises in their behalf to enable them to obtain money to that end : Now therefore : This indenture, made and entered into this the 30th day of May, 1876, by and between Manfred Call and S. E. Call, his wife, of the city of Richmond and commonwealth of Virginia, of the first part, and Seymour Steele, of the city of Greensboro and state of North Carolina of the second part; *witnesseth,*

That for and in consideration of the said Seymour Steele becoming the security for the said Jones Brothers to the said National Bank for the said sum of five thousand dollars borrowed money, to enable the said Jones Brothers to carry on their business of manufacturing tobacco in the said factory as aforesaid, and for the further consideration of the sum of one dollar in hand paid by the said party of the second part to the said party of the first part, the receipt of which is hereby acknowledged, the said party of the first part hath bargained, sold, and conveyed, and by these presents doth bargain, sell and convey unto the said party of the second part one large brick tobacco factory (known as the Jones Brothers factory, where they are now doing business) and fixtures contained therein and used in the manufacture of tobacco. [Said factory being located in Greensboro, &c.]

To have and to hold with all the appurtenances thereto belonging, or in any wise appertaining unto the said Seymour Steele, party of the second part, his heirs and assigns forever. Upon the express condition nevertheless, that if the said Jones Brothers shall pay to the said National Bank the said sum of five thousand dollars due as aforesaid, then this deed and every part thereof shall be void and of no effect. Otherwise, it shall remain as an indemnity to the said Steele for all losses which he may sustain by reason of his suretyship to the said bank for the said Jones Brothers for the said sum of five thousand dollars; the said property to be liable as an indemnity for no more than five thousand dollars.

In testimony whereof the said party 'of the first part hath hereunto set their hands and seals, this the 30th day of May, 1876. (Signed and sealed by Manfred Call and wife.)

The question was as to the proper construction of this mortgage.

At the hearing of the case, it was admitted by the defendants that Jones Bros. had made default as contemplated by this mortgage, and that the plaintiffs were entitled to a decree of foreclosure, and for a sale of the property therein mentioned, to pay the sum of five thousand dollars, *and no more.* The plaintiffs however contended that they were entitled to be paid that sum, and, under a proper construction of the mortgage, *the interest thereon.*

The court held that the indemnity provided was for only the sum of five thousand dollars. Thereupon the plaintiffs excepted and appealed to this court from the judgment rendered.

*Messrs. J. T. Morehead* and *John H. Dillard,* for plaintiffs.
*Messrs. Scott & Caldwell,* for defendants.

MERRIMON, J. The single question presented for our decision is, whether or not the plaintiffs are entitled to be indemnified under the mortgage before us, as to the interest that has accrued, or may yet accrue, upon the debt of $5,000 due to the National Bank of Greensboro, therein mentioned? We are of the opinion, that under a proper construction of the mortgage, they are so entitled.

It is manifest that the general and leading purpose of the mortgage, as it appears by the stipulations and qualifications contained in it, was to indemnify the intestate of the plaintiff against all loss incident to his liability as surety to the note of Jones Bros., given to the bank. The fair inference from the face of the mortgage and particularly the

facts stated in the preamble thereof, is, that the intestate had no interest in the business of the firm named; that he became their surety purely as a matter of favor and good will; but the defendant Call had contracted to sell them the tobacco factory and premises connected therewith, and had a personal and valuable interest in the success of their business, and for the purpose of enabling them to carry on their business of manufacturing tobacco, he "agreed to mortgage the said factory and premises *in their behalf to enable them to obtain money to that end.*" In effectuating this purpose, he executed the mortgage. It is stipulated in it, that the note for $5,000 shall be paid, "when due as afore-said," that is, twelve months next after the first day of June, 1876, then, the deed of mortgage should "be void and of no effect," but if it shall not then be paid, then it should "*remain as an indemnity to the said Steele for all losses*" which he may sustain by reason of his suretyship to the said bank for said Jones Bros., for the said sum of five thousand dollars, *the said property to be liable as an indemnity for no more than five thousand dollars.*"

It is contended by the defendant Call, that the words, "the said property to be liable as indemnity for no more than five thousand dollars," limits the indemnity provided to that exact sum. We cannot accept this interpretation as the correct one.

The words must be given such import as will make them, and the provision embodied in them, harmonize with the general purpose of the agreement, and the particular stipulations and qualifications contained in it, if this can be done. The general purpose was, as we have seen, to indemnify the intestate against all loss incident to the suretyship. The surety had no interest in Jones Bros.' enterprise so far as appears, but Call did. And it is provided in terms, that if default in the payment of the debt at maturity shall be made, the deed shall "remain as an indemnity to the said

Steele for all losses which he may sustain by reason of *his suretyship* to the said bank " for the debt. Any interest due on it, if not paid, was incident to and part of it. If Steele had paid the debt at maturity, he would have been entitled to interest upon the money so paid by him until he should be repaid. Why then should he not be indemnified for the incidental part of the debt as well as the debt itself? The nature of the transaction suggests that the indemnity should extend to the interest. Apart from the stipulations in the agreement, in the order of such things, the indemnity would extend to the interest, and taking the stipulations and qualifications in their spirit, they contemplate that it shall so extend.

But it is asked, what effect is to be given to the plain words of limitation as to the liability of the mortgaged property? Are they to be eliminated merely? Certainly not. They must be given their legitimate weight. But they were intended to serve a different purpose from that so attributed to them. This purpose is obscured by their location and connection in the agreement. The debt was created and the mortgage made to enable Jones Bros., to whom Call had contracted to sell the factory and premises connected with it, to carry on their business of manufacturing, and the mortgage of the property that belonged to Call was made specially, " to enable them to obtain money,"—how much, is not in this immediate connection specified; but it is made definite in the subsequent clause, which provides, that " the said property to be liable as an indemnity for no more than five thousand dollars," that is, for not more than the debt mentioned and the interest that might come due upon and as part of it. The limitation was intended to prevent any increase of that debt by enlarging the note, or getting money by means of a new note, " to carry on the said business of manufacturing." The sum of money realized from the note was all that was intended to be obtained

13

through the means of the mortgage, and to render certain the indefinite purpose expressed in the preamble, to get money to carry on the business by means of the indemnity provided by the mortgage. The limitation was inserted, not in the connection where it ought to appear, but in a subsequent provision. If the clause limiting the amount of the debt had been inserted in its proper place at the end of the preamble, its meaning and purpose would have admitted of little question.

The real end to be attained in construing agreements, is to ascertain and determine accurately what the contracting parties engaged to do or not to do. In accomplishing this purpose, it is a well understood rule of construction, that the whole of the agreement must be considered, and not simply parts of it. When it contains stipulations and qualifications, it cannot be, that the intention of the parties was, that some of them shall be altogether or partly disregarded, while others are given undue weight and importance and allowed to shape and control the effect of the agreement; on the contrary, such meaning must be given to particular parts, as will, without violence to words, be consistent with all the other parts and with the evident purpose and intention of the contracting parties. Regard is to be paid, not simply to the language of any particular part of the agreement, but to the language and bearing of the whole of it, where there is seeming conflict. If there be found in any particular clause an expression not so comprehensive in its import as other clauses or words may be, and that these are contradictory or inconsistent, and that upon a view of the whole instrument the real intention of the parties can be ascertained, effect must be given to that intention, notwithstanding the words or clauses of less import. And in order to ascertain such intention, words and clauses may be transposed, so as to give them their legitimate weight and effect. It is oftentimes necessary to do this in order to

give effect to an agreement, and effectuate the real intention of the parties. *McNeely* v. *Carter*, 1 Ired., 141; *Dwiggins* v. *Shaw*, 6 Ired., 46; Smith on Contracts, 404, *et seq.*

We think that the court below erred in its construction of the mortgage in question, and that its judgment must therefore be reversed. Let this be certified to the superior court.

Error.                                    Reversed.