NEW HOME SEWING MACHINE COMPANY v. SEAGO.

(Filed April 23, 1901.)

1. BONDS—*Penal—Interest—The Code, Sec. 530.*

The recovery upon a penal bond can not exceed the penalty named therein, though the excess is for interest on the amount of the defalcation after breach of the bond.

2. EVIDENCE—*Agency.*

An agent who takes a bond for the execution of a contract may testify as to his agency in an action on the bond.

Clark, J., dissenting.

Action by the New Home Sewing Machine Company against Henry E. Seago, D. R. Seago and W. A. Marks, heard by Judge *Thomas J. Shaw* and a jury, at the December Term, 1900, of Stanly County Superior Court. From a judgment for the plaintiff, the defendants appealed.

*Austin & Smith,* for the plaintiff.
*J. Milton Brown,* for the defendants.

Furches, C. J. This is an action of debt upon a penal bond of $500, given by the defendants to the plaintiff to indemnify it against loss on account of the agency of the defendant Seago. Upon the trial it was found that the plaintiff was entitled to recover $442.27 for defalcations

upon which he was allowed $104.44 interest, making together the sum of $546.71. For this amount the plaintiff was allowed judgment and defendants excepted.

While cases may be found in many jurisdictions to sustain the judgment of the Court, we do not think it can be sustained upon principle, nor under the statutes and decisions of this State.

The penalty of the bond sued on is $500. This, we think, is the extent of the defendant's liability. The Court can not change the terms of the bond, nor increase the liability of the defendants.

We understand it to be admitted by the plaintiff that this would be so if the principal of the plaintiff's recovery was more than the *penalty* of the bond sued on. But it is contended for the plaintiff that this makes the difference; that the principal of the plaintiff's recovery, or in other words, the amount of the agent's defalcation, was only $442.27, and the balance of the judgment is interest, and incident to the debt. But it is incident to the debt created by the defalcation of the agent, and collateral to the bond sued on, and can not increase the liability of the bond unless the bond draws interest. It seems to us that the contention of plaintiff can not be so upon principle and sound reasoning.

The plaintiff had no debt against the defendants—the sureties—and none against the principal on the bond, until it obtained its judgment; and this judgment under our statute draws interest until it is paid. At early common law, no indebtedness drew interest. 16 Am. & Eng. Enc. Law, 991 and note 8. There were English statutes passed afterwards providing for interest. Interest is a creature of legislation and has been provided for by our Legislature. Code, sec. 530. And in this legislation providing for interest, it is expressly provided that *penal* bonds shall not draw interest; and as this suit is on a bond which can not draw interest, it would seem that this should end the discussion.

At common law, the judgment on a penal bond was for the amount of the penalty, when a breach of the condition was shown.    The actual damages were not assessed in that action; and, if they were not so great as the penalty of the bond, defendants' remedy was to go into a court of chancery and ask for relief against the plaintiff's judgment.    He there obtained a writ of inquiry, called *"Quantum Damnificatus,"* when the real damages were inquired into and determined. *Governor v. Evans,* 13 N. C., 383.    This was troublesome and expensive, and considered a hardship on defendants; and to prevent this trouble and expense, and for the benefit of defendants, it was provided by statute that the actual damages might be assessed by the Court and jury trying the action on the bond.    Before the statute providing that the real damages might be tried and determined in the suit on the bond, the judgment could only be for the *penalty* of the bond. And it would be singular if this statute, intended for the benefit of defendants, should prove a boomerang and subject them to greater damages than they were liable for before its passage. Before the passage of this statute, a plaintiff recovered judgment upon the *bond* for the *amount* of the bond, because his action was upon the bond.    After the statute, he still recovered judgment on the bond, but if it turned out that the actual damages sustained by plaintiff were less than the *penalty* of the bond, the judgment was still for the amount of the bond, but to be discharged by the payment of the actual damages and costs of action.

This seems to have been so well understood by the profession in this State, that we have but little direct authority on the subject.    But these are in harmony with the English authorities, and show that plaintiff can only have judgment for the penalty of the bond.    *Anthony v. Estes,* 101 N. C., 541. It is claimed that *Stafford v. Jones,* 91 N. C., 189, is authority to sustain the judgment of the Court below.    But it does.

not seem to us that it is.    That was not an action on a *penal bond,* but a construction put upon a mortgage in an action to foreclose.    And whether the construction put upon the mortgage in that case is correct or not, we can not think it is authority in this case.    Justice *Merrimon,* who wrote the opinion in *Stafford v. Jones,* and Chief Justice *Smith* were both on the bench when that opinion was delivered, and they were both on the bench when Chief Justice *Smith* wrote the opinion in *Anthony v. Estes,* and *Stafford v. Jones* is not referred to.    This shows, to our minds, that *Stafford v. Jones* was not considered by that Court as being in conflict with *Anthony v. Estes.*    But if it was, *Anthony v. Estes,* being the later case, which expressly decides the point in this case, must be held to overrule *Stafford v. Jones.*

As we have said, we do not find many direct authorities in our Court, but we find quite a number of cases which bear upon the question—such as *Bell v. Jasper,* 37 N. C., 597; *Jones v. Hayes,* 38 N. C., 502; *Bryan v. Rosseau,* 71 N. C., 194; *Branch v. Elliott,* 14 N. C., 86, where it is held that it is not necessary for the jury to find the amount of the bond sued on, as that is settled by the penalty of the bond, and the judgment is for that amount; *Thoroughgood v. Wallis,* 47 N. C., 15, where there is a clear discussion of the doctrine.

There is one other exception:    The plaintiff produced its general agent, who testified that he was a general agent of the plaintiff, and as such made the contract with the defendant Seago  and took the bond sued on.    The defendant objected to this evidence upon the ground that agency could not be proved by declarations or acts of the agent.    This proposition is correct in a proper case, but does not apply in this case.    It applies where a party is trying to establish an agency for the purpose of making the principal liable for the acts of the agent.    But that is not the case here.    In this case, it is for the purpose of holding the agent liable.    Besides, we know

128——11

of no rule of evidence that does not allow an agent to go on the witness stand and testify that he is an agent. It is not a declaration, but the sworn evidence of a witness. This exception can not be sustained.

As this is the only error pointed out affecting the trial, we are of the opinion that the judgment should be corrected by reducing the same to $500, and, being so corrected, it should be

Affirmed.

CLARK, J., dissenting. The defendant, H. E. Seago, gave bond in the penal sum of $500 with the two other defendants as his sureties for the faithful discharge of his duties as agent for the sale of sewing machines, and accounting for all sums received by him as such. This action is to recover of him and the sureties on said bond the sum of $442.27 alleged to have been illegally retained by him in breach of said bond, with interest thereon from the date of such breach.

A witness testified that he was general agent of the plaintiff in this State and produced his written authority as such. Defendants' exception to this evidence is a misconception. It is true that an agency can not be proved by declarations of the agent, *Taylor v. Hunt,* 118 N. C., 173; but that is where the declarations of one holding himself out as agent are sought to be given in evidence by another person to prove the agency against the principal. But here the agent goes on the stand himself to prove the fact, and the evidence is competent. It was also competent to corroborate his statements on the stand by showing the same statement had been made by him previously in a letter offered in evidence. *State v. Whitfield,* 92 N. C., 831. The Court also held correctly that there was no evidence to go to the jury to justify the release of Marks as a surety.

It was not contested on the trial that the principal of the

defalcation is $442.27, which, with interest, amounted to $546.71 at the date of the judgment. Judgment was thereupon rendered against all the defendants for $546.71. with interest on $442.27 from the date of the judgment till paid, and for costs. It is not contested that this is correct as to the principal, but exception is made that judgment can not be rendered against the sureties for more than $500, the penalty named in the bond.

No consideration is attached to the addition after the $500, of the words "with ten per cent attorney's fees for collection," that stipulation is held invalid. *Martin v. Boger,* 126 N. C., 300.

Where the damages recovered upon a bond of this nature do not exceed the amount of the bond, no difficulty of this nature can arise. But where, as in this case, the recovery is for a greater sum, the question arises as to whether interest upon the default (the principal of course not to exceed the penalty of the bond) can be recovered against the sureties. Upon this subject there has been some diversity in the Courts. On such state of facts, New York, Maine, Vermont, Kentucky and Kansas, and indeed the great weight of authority is that judgment goes against the sureties for the principal of said default (not to exceed the amount of the penalty of said bond) with interest thereon from the date of the breach. *Brainard v. Jones,* 18 N. Y., 35; *Wyman v. Robinson,* 73 Me., 384; 2 Sutherland on Damages, sec. 478 (19); *Carter v. Thorne,* 57 Ky. (18 B. Monroe), 613; *Williams v. Wilson,* 1 Vt., 266; *Perit v. Wallis,* 2 Dallas, 252; *Carter v. Carter,* 4 Day, 30; *U. S. v. Arnold,* (Story, J.), 1 Gall, 348; *Burchfield v. Haffey,* 34 Kan., 42, overruling prior case; *Lyon v. Clark,* 8 N. Y., 148; *Ringle v. O'Matthiessen,* 39 N. Y., Supp., 92.

Massachusetts allows judgment against sureties for the principal sum of default or damages (not to exceed penalty)

with interest thereon from the beginning of the action. *Warner v. Thurlow,* 15 Mass., 154; *Bank v. McGill,* 1 Paine (C. C. R.), 661.

In a very few old cases judgment was given against the sureties for the principal of the bond with interest only from the date of the judgment. *Tyson v. Sanderson,* 45 Ala., 364; *Bonsall v. Taylor,* 1 McCord (S. C.), 503. This seems to have been the English rule, 2 Sedgwick Damages, sec. 678, with some contrariety, however. *Gainsforth v. Griffith,* 1 Sanders, 51, note 1, but even in England the later cases all tend toward the American rule.

Owing to this diversity and the very great importance of the ruling as affecting all bonds of this nature, including official bonds, bonds of guardians and administrators, bonds in injunction, attachment and claim and delivery proceedings, and penal bonds generally, a great number of decisions have been examined, only a part of which have been cited above, and by the great weight of authority, especially in the more recent cases, the rule first cited above is now quite well settled, which was also the view taken by the Court below.

In 2 Sutherland on Damages, sec. 478, after thoroughly discussing the question, it is said, citing a column of cases in note 2: "The weight of American authority, however, is in favor of allowing interest on damages beyond the penalty. The penalty is the limit of the liability *at the time of the breach;* interest is given afterwards, not on the ground of contract, but as damages for its violation; for delay of payment after the duty to pay damages for breach of the condition to the amount of the penalty had attached." *Ibid,* it is said: "Interest may properly be charged against sureties for delay after it became their duty to pay, as well as against the principal."

In 2 Sedgwick on Damages, sec. 678, after a similar discussion, the same conclusion is reached: "The better opinion

is that interest may be recovered in addition to the penalty in an action, whether against principal or surety," and a large number of authorities to that effect is cited in the notes. To the same purport is the weight of the authorities, all of which are to be found collected in 8 American Digest (Century Ed.), sec. 243.   To same purport, 4 Am. & Eng. Enc. (2d Ed.), note 2, and Field on Damages, sec. 546, and cases there cited.

The reasoning of this rule, which seems now the prevailing one, and the better one, is thus given (1882) in *Wyman v. Robinson, supra,* S. C., 40 Am. Rep., 361: "It is commonly said that the damages can not exceed the penalty of the bond. Rightly understood, the statement is true.   But what is the penalty in a bond for the payment of damages?   It is the amount which the obligors agree to pay, if the whole penalty be needed for the purpose, for the damages sustained by the obligee by a breach of the bond, the amount to be paid as soon as the breach occurs.   The obligee is to have the penalty at a particular and definite time.   Immediately upon a breach of the bond the penalty is due to him.   If he gets it then, he gets what the contract provides; if he gets it later, he gets less than what the contract provides.   If then the penalty be paid after the breach, interest should be added for the detention of the penalty, to make it equivalent to a payment at the date of the breach.   After the penalty is forfeited, it becomes a debt due.   The sureties then stand in the relation of principals to the obligee, owing him so much money.   The penalty of the bond is payable because the principal did not fulfill his obligation; the interest is the penalty upon the sureties for not fulfilling theirs."

This reasoning is sound, and accounts for the concensus of the more recent cases upon that line.

In our own State, we have two decisions, *Stafford v. Jones,* 91 N. C., 189, which is to above result, but on a somewhat

different line of reasoning; and *Anthony v. Estes,* 101 N. C., 541, in which it is said that no more than the penalty named in a guardian bond can be recovered against either the guardian or his sureties; the question of interest, however, is not raised, and this ruling is expressly stated to be "not material in disposing of the appeal." The form there cited from Mr. Eaton evidently is intended for cases where the recovery is for a sum less than the penalty of the bond. The question will rarely arise as to guardian, administration and similar bonds, as to which it is customary to require a bond in double the sum at risk.

Our only direct authority, *Stafford v. Jones, supra,* being in conformity with the better reasoning and the rule as settled by the great weight of authority elsewhere and eminent text-writers, we should adhere to it.

The Code, sec. 530, has no application. Of course the penalty of the bond bears no interest. Here, the sureties bound themselves to make good any breach of the principal, not to exceed $500. But they bound themselves to make that good when it occurred. Their failure to do so is their own default and they are liable for the $442.27, which is the amount of their principal's default, and by virtue of their contract to pay such default the sureties are liable for interest on said $442.27 for every day they delayed to make it good. There is nothing in the bond or in the contract which delays the running of interest on this breach by the sureties of their own contract till after judgment. "It is not so nominated in the bond."