Belknap,
Feb. 2, 1904.

### UNION HOSIERY CO. & a. *v.* HODGSON.

The authority of a tenant in common to act as agent for his co-tenants in a given transaction cannot be inferred from his undertaking so to do in the particular instance, nor from a special authority to represent them in another transaction concerning the common property.

The testimony of an alleged agent is admissible to prove his authority.

Testimony as to the understanding of the parties interested in the purchase of property is competent upon the question of its ownership.

The exclusion of evidence which only tends to prove a conceded fact does not constitute reversible error.

No exception lies to the rejection of evidence which might properly have been excluded on the ground of remoteness, in the absence of indication that such was not the fact.

ASSUMPSIT, to recover the value of steam furnished the defendant for mechanical and heating purposes, from December 1, 1899, to January 6, 1900. Trial by jury and verdict for the defendant. Transferred from the November term, 1902, of the superior court by *Stone*, J. The plaintiffs are Franklin P. Stewart, doing business as the Union Hosiery Company, J. P. and Georgia A. Morin, copartners under the name of J. P. Morin & Company, and the Belknap Mills, a corporation, of which William C. Marshall is the treasurer and general manager.

The defendant during the period aforesaid was operating a dyehouse which she leased of the Belknap Mills. The Union Hosiery Company and Morin & Company were also tenants of the Belknap Mills, occupying separate and distinct parts of the latter's prem-

ises.    The Belknap Mills also occupied a portion of the premises. The several departments occupied by the plaintiffs were heated from the boiler owned by the Belknap Mills, and from this boiler the steam in question was furnished to the defendant.

The plaintiffs' evidence tended to prove that in November, 1899, the defendant's agent asked Marshall if steam could be taken from the Belknap Mills boiler to operate the dye-house until a new boiler could be installed for the purpose, and that Marshall assented; that nothing was said about compensation; but Marshall understood and expected that the defendant would pay what the steam taken by her was reasonably worth; that she began taking steam December 1, 1899, and used it for all her dye-house purposes for thirty-one days thereafter; that the plaintiffs used the boiler for heating only, from ten to fifteen pounds pressure being sufficient for that purpose; that the expense of running the boiler for the plaintiffs' use was slight, but that it was necessary to maintain the pressure at from forty to sixty pounds for the dye-house, the purposes for which the steam was there used taking the steam from the boiler very rapidly and requiring a large amount of coal and frequent attendance to keep up pressure; that at the time the defendant's agent asked Marshall for steam he was told that, as the dye-works would require more steam and a higher pressure than was necessary for heating purposes, he had better run the boiler himself, as by so doing he could control the pressure as he desired, and that this arrangement was solely for the defendant's accommodation.    A witness who had operated the dye-works for a number of years, in connection with the same boiler, testified that in his judgment it would take a ton of coal a day to make the steam necessary to do the work done by the defendant in the dye-house during the time in question.

In support of the claim that the plaintiffs owned the coal jointly, there was evidence that they conferred together each year and decided upon the time to buy their year's supply; that Marshall, acting for the Belknap Mills and the other plaintiffs, and with the authority and consent of the latter, purchased the coal and had it billed to the Belknap Mills for the sake of convenience; that as the bills became due, Stewart and Morin & Company paid the Belknap Mills for their shares, and the latter paid the vendors of the coal with company checks; that at the end of each year all the items on the heating account, including the coal bills, were added together, and the whole matter was then adjusted between the plaintiffs by each paying such proportionate part of the whole as his radiation bore to the total radiation; that Marshall had no general authority from Stewart and Morin & Company to permit others to use the steam, and no authority whatever from them to

make the agreement set up by the defendant ·and hereinafter stated. Receipted bills for coal, made out to the Belknap Mills, were introduced in evidence.

The defendant's evidence tended to prove that through her agent she had several talks with Marshall relative to taking steam from the boiler of the Belknap Mills for dye-house purposes until her new boiler should be installed; that Marshall said she could have the steam, and, in answer to an inquiry as to the cost thereof, said that if she would furnish McGloughlin, a skilled dyer, to fire the boiler while she used the steam, no charge would be made; that she agreed to Marshall's proposition, began taking steam December 1, 1899, furnished McGloughlin to run the boiler, paying him $2.50 a day, and used the steam until the last day of the month; that a comparatively small amount of work was done in the dye-house that month, the steam being used only a part of each day and aggregating ten days in all; that she used only a small part of the steam generated, and, having furnished a man to tend the boiler, as agreed with Marshall, was not indebted to the plaintiffs.

It appeared that in February, 1900, Marshall sent a bill for the steam to the defendant, made out in the name of the Belknap Mills, which was returned with the following item written upon it: "John McGloughlin, 31 days, at $2.50 per day." Afterward Morin & Company sent a bill for the steam, made out as follows: "E. A. Hodgson, to J. P. Morin & Co. and others." It also appeared that the Laconia *Democrat* and one Tilton used the boiler for heating purposes for two or three days during the time the defendant had steam. The Union Hosiery Company and Morin & Company knew that the defendant was taking steam and that she furnished McGloughlin to run the boiler, but they did not know of any agreement made by her with Marshall, beyond the fact that she might use steam, and they supposed that she was to pay what the service was reasonably worth. The defendant did not know that the Union Hosiery Company and Morin & Company had any interest in the steam or the coal used in producing it.

On the direct examination of J. P. Morin the following question was excluded, subject to the plaintiffs' exception: "When the coal was brought there to the mill, who owned the coal as you understand it?" On the direct examination of Stewart the following question was excluded, subject to the plaintiffs' exception: "Whether or not you knew from any source that there was any contract between Marshall and Mrs. Hodgson that steam was to be furnished for use in her dye-house during the month of December, in.consideration that she keep up steam in the boiler?"

The plaintiffs' request for the following instructions was denied, subject to their exception: "The evidence is undisputed that the coal used in making the steam that was used by Mrs. Hodgson, the defendant, in her dye-house, in December, 1899, was owned jointly by Morin & Company, Stewart, and the Belknap Mills. Therefore, Marshall would have no power to give away the coal without the assent of the other joint owners, or to make the contract that the defendant alleges was made with her, through her agent Samuel Hodgson, in relation to the steam furnished her, and for which payment is sought to be recovered in this action. Then, even if you should find that Marshall did make the contract for the steam, as alleged by the defendant, that fact does not prevent a recovery in this case, unless you should further find that the other plaintiffs knew of and assented to the contract, or afterward ratified the same." The portion of the charge upon this subject, to which the plaintiffs specially excepted, appears in the opinion, as does also their exception to the exclusion of certain evidence as to the amount of coal consumed.

*Walter S. Peaslee*, for the plaintiffs.

*Shannon & Young*, for the defendant.

BINGHAM, J.    This action is brought to recover the value of certain steam used by the defendant, in which the plaintiffs claim to be joint owners or tenants in common. Two grounds of defence were relied upon at the trial: (1) That the Belknap Mills was the sole owner of the steam, and that Marshall was its general manager, and agreed to an exchange of the steam for services to be rendered by the defendant in tending the boiler; and (2) that if Stewart and Morin owned the steam in common with the Belknap Mills, Marshall was their agent and made the agreement in their· behalf. A general verdict was rendered for the defendant. It cannot be ascertained whether the verdict was rendered upon the first or second ground of defence; but in order to reach a verdict for the defendant on either ground, the jury must have found that Marshall made the agreement alleged by the defendant.

It was conceded that the Belknap Mills owned an interest in the steam, but the defendant's contention was that it was the sole owner. The charter of the Belknap Mills is not reported, but the company held itself out as possessing authority to rent its premises to tenants and to supply them with steam from its boiler. Stewart, Morin, and the defendant were its tenants. Marshall was its general manager, and therefore possessed authority to

make the contract in its behalf. The jury have found that he made the alleged agreement with the defendant. The record, as will be hereinafter shown, presents no error of which the Belknap Mills can avail itself. Under these circumstances, it matters not whether the Belknap Mills owned the whole or a fractional part of the steam; its right of recovery is precluded by the verdict.

Can the verdict be sustained as against Stewart and Morin? The case was tried upon the theory, and the jury were instructed, that the plaintiffs could maintain their action if Stewart and Morin owned interests in the steam, and if Marshall had no authority to make the contract of exchange with the defendant in their behalf. No exception was taken to this instruction. For the purposes of this case, the instruction may be regarded as the law, without considering whether the action in the present form can be maintained (*Russell* v. *Clough*, 71 N. H. 177; *Tucker* v. *Preston*, 60 Vt. 473; *Turner* v. *Webster*, 24 Kan. 38; Keener Quasi-Cont. 330), or cannot be (*Concord Coal Co.* v. *Ferrin*, 71 N. H. 33; *Clark* v. *Sanborn*, 68 N. H. 411; *North Haverhill Water Co.* v. *Metcalf*, 63 N. H. 427), or whether the declaration should be amended (*Hayes* v. *Colby*, 65 N. H. 192; *Gould* v. *Blodgett*, 61 N. H. 115; *Taylor etc. Co.* v. *Starkey*, 59 N. H. 142), or if amended, whether the evidence might disclose such a state of facts as to preclude a recovery. *Pickering* v. *Moore*, 67 N. H. 533, 536. No error is perceived in that part of the charge wherein the court stated the plaintiffs' claim and referred to Mr. Marshall as the agent of the Belknap Mills, nor in the reference made to certain documentary evidence in the case.

The exception upon which counsel for the plaintiffs seem to specially rely is the one taken to that part of the charge wherein the jury were told that " if Marshall was the agent of these plaintiffs in buying this coal, and making these payments, and doing what it is in evidence he did do, and if he was acting as agent for these plaintiffs, then I shall rule as a matter of law that they would be bound by whatever representation he made to . . . Hodgson, unless . . . Hodgson knew to the contrary. If you should find as a matter of fact that . . . Marshall was the agent of the plaintiffs in this matter,—that is a question of fact for you to determine,—and that acting in his capacity as agent for these plaintiffs he had this talk with . . . Hodgson, as testified to by the defendant, then I charge you again as a matter of law, the defendant would be entitled to your verdict, unless you find that . . . Hodgson knew of . . . Marshall's agency and the limitations of it."

This instruction was misleading and erroneous. It did not explain to the jury what was essential to give Marshall authority

to bind Stewart and Morin as their agent. If it did not in effect tell the jury that they might assume that Marshall had authority to act for Stewart and Morin if he undertook to make the contract in their behalf, it at least permitted them to infer that he had authority to bind Stewart and Morin if he was their agent in buying and paying for the coal and undertook to act in their behalf in making the contract with the defendant. But authority to exchange the steam for the defendant's services could not be inferred from his undertaking to so dispose of it, nor from his agency to buy and pay for the coal. It must be proved by other competent evidence. This exception is sustained as to Stewart and Morin; but as there is no question of Marshall's general agency for the Belknap Mills, the error does them no harm.

The defendant did not deny that Mr. Hodgson was her agent. His agency for her could be proved by his testimony.

The remark of the defendant's counsel, to which exception was taken, seems to be of no materiality.

To determine who owned the coal, it was necessary to ascertain the understanding of all the parties interested in its purchase. As Morin was one of the parties so interested, his understanding was material and the testimony which he offered should have been received in evidence. *Foster* v. *Sargent, ante, p.* 170.

The case finds that Stewart did not know of any agreement between Marshall and the defendant as to the steam, beyond the fact that she might use it. As this appears to have been a conceded fact, the plaintiffs were in no way injured by the exclusion of the question addressed to Stewart.

The defendant used the steam during the month of December, 1899. The value of the steam used by her during this period was in dispute. The plaintiffs, the defendant, and others used steam from the same boiler that month. As bearing on the value of the steam used by the defendant, the plaintiffs offered to show the amount of coal consumed the two or three years preceding and the year following that in which the defendant had steam. If the amount of coal consumed in those years, other conditions being the same, had some tendency, when compared with the total amount consumed during the business year of which the above named month formed a part, to prove how much was consumed that month for the defendant's benefit, still it was for the trial justice to say whether the conditions were similar, and whether the evidence was too remote. As no reason for the exclusion of the evidence was given, and as it may have been properly excluded for either of the reasons above named, the exception presents no question of law. *Reagan* v. *Railway, ante, p.* 298; *Saucier* v. *Spinning Mills, ante, p.* 292; *Challis* v. *Lake,* 71 N. H.

90; *Hilliard* v. *Beattie*, 59 N. H. 462; *State* v. *Railroad*, 58 N. H. 410.

The instruction requested as to the ownership of the coal was. properly denied. As to this question, different inferences might be drawn from the facts proved, and it was for the jury to determine.

The exceptions to the exclusion of the evidence as to Morin's understanding of the ownership of the coal, and to the charge of the court as to agency, are sustained. The others are over- ruled. Neither of those sustained was material to a recovery by the Belknap Mills, and the verdict stands as to them; but as to Morin and Stewart it is set aside.

*Case discharged.*

All concurred.