[Civ. No. 6666.   Third Dist.   Apr. 28, 1942.]

C. M. SYAR et al., Appellants, v. UNITED STATES
FIDELITY & GUARANTY COMPANY (a Corpora-
tion), Respondent.

Hewitt & McBride, Hugh K. McKevitt and Jack M. Howard for Appellants.

Horace W. B. Smith and Jerome D. Peters for Respondent.

TUTTLE, J.—Plaintiffs seek to recover damages for breach of contract. At the close of their case, a motion for nonsuit was granted, and this appeal is prosecuted from judgment of dismissal thereafter entered.

The following statement of the facts is made in view of the well-known rule that on a motion for nonsuit, every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence must be considered facts proved in favor of plaintiff; contradictory evidence must be discarded and the evidence weighed in the light most favorable to plaintiffs' claim. Relevant evidence even erroneously admitted must be given the credit and benefit of its full probative strength. The reporter's transcript contains several hundred pages, and it is obviously impracticable to set forth *all* of the evidence adduced upon the part of plaintiffs.

At the time in question, E. Carl Langguth and Harold W. Moore were licensed under the law as resident or local agents of respondent, at Yuba City, California, with the power to write and issue notarial and judicial or court bonds and undertakings. They were also authorized to *solicit* (but not write or issue), other bonds and undertakings, including contract bonds of the character involved in this action. Defendant is a corporation authorized under the laws of the State of California to transact a surety business and issue surety bonds. It maintained a branch office in San Francisco, which was managed by Edwin Porter. The latter was also a vice-president of defendant. Ernest Copeland was superintendent of its bond department in San Francisco. Early in

1940, Langguth had a conversation with plaintiff Syar, in which the latter stated that he might bid upon a state road contract, which required a bond for faithful performance upon the part of the successful bidder. Langguth thereupon solicited the writing of such bond. Later, Porter visited Yuba City, and informed Langguth that respondent would bond Syar for *$25,000*. They also discussed the matter of securing plaintiff through an indemnity bond issued by the other plaintiffs. Porter expressed doubt as to whether a $25,000 bond would be sufficient. On April 25, Langguth wrote Copeland, enclosing Syar's financial statement, and stating that a further and complete statement would be furnished later. He recommended in the letter that the bond be issued. Langguth testified as follows, concerning a conversation had with plaintiff Rose: ''Mr. Rose asked me if the Company would issue it (the bond) and I said, yes, we would.'' On the morning of April 24, the date when the bids were opened, Langguth met plaintiffs at the office of defendant Oil & Burner Company. He had been previously advised by Syar that the latter company was willing to act as indemnitor. At that time Langguth testified that he had told plaintiff Rose, the defendant was going to issue a bond, stating, ''definitely, we will bond you.'' When the bids for the work were opened, that of plaintiff Syar was lowest. Syar had delivered to the State of California a certified check in the sum of $5,600. The bid was accepted, and the highway construction contract was awarded to Syar. On April 26th, but under date of April 24th, Langguth wrote the following letter to Syar:

''Dear Mr. Syar:

''This is to advise you that if you are successful in your bid for highway work in Mendocino and Lake Counties for the State of California, bids for which are to be opened on April 24, 1940, upon express approval of the Company had and obtained, the United States Fidelity & Guaranty Company will furnish the necessary bonds, provided the co-partnership doing business under the fictitious name of Yuba-Sutter Oil & Burner Co., of Marysville, California, will act as Indemnitor thereon.

Yours very truly,

MOORE & LANGGUTH,

Agents for United States Fidelity & Guaranty Co.

By: E. C. LANGGUTH.''

With the following attached below:

"April 24, 1940.

"This is to certify that the co-partnership doing business as Yuba-Sutter Oil & Burner Co., of Marysville, California, will act as indemnitor on the above-mentioned bonds if bid of C. M. Syar is successful in the described premises.

YUBA-SUTTER OIL & BURNER CO.,
L. M. ROSE,
L. M. ROSE, copartner."

Plaintiff Rose testified that Langguth told him, "All right, you can consider yourself bonded on that job." He testified that on the morning when the bids were opened, Langguth told him that a letter would be forthcoming guaranteeing the issuance of a bond to plaintiffs on the work, if the bid were successful; that he (Rose) returned with the check for the bid deposit, and Langguth said, "I will get the information and letter from the Bonding Company . . . I am going to phone them right now." That Langguth telephoned defendant, and when the conversation was finished, he said to Rose, "You can consider yourself bonded, and the letter will be forthcoming." He also stated, "We are all right, and you boys can go ahead; you are bonded. I just talked to my Company, and everything is all prepared and ready to go." Plaintiff Syar testified that after the bids were opened at Sacramento, he was present when Langguth telephoned defendant company from a telephone booth, and that Langguth returned from the booth, saying, "She is a cinch, boys, she is in the bag." Thereafter, defendant refused to issue the bond and the deposit of $5,600 was forfeited to the state. Syar testified that he tried to obtain a bond from other sources, but was unsuccessful. He further testified that he would have realized a profit of $13,174.74 from the performance of the contract.

It is contended by appellants that their evidence makes out a case of actual authority upon the part of the agent. "Actual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." (Civ. Code, § 2316.) All parties agree that the power of attorney from respondent to its agent did not include authority to issue the bond, and the undisputed evidence shows that plaintiffs knew that such bond could not be issued without special authorization from the officers of respondent in San Francisco. Appellants con-

tend, however, that there is evidence from which it can be inferred that such special authority was given.

We think that the evidence was sufficient to justify the submission of the issue to the jury. In *Kast* v. *Miller & Lux*, 159 Cal. 723, at pages 727 and 728 [115 Pac. 932], it is stated:

"The rule is well established that the fact of agency when it rests in parol may be established on the trial by the testimony of the agent himself. His testimony is admissible and competent to prove the agency and the nature and scope of his authority and to bind his principal thereby. This is the general, and it may be said, the universal rule. (Mechem on Agency, § 101; *Parker* v. *Pond*, 121 Ala. 529 [25 South. 898]; *O'Leary* v. *German A. Ins. Co.*, 100 Iowa, 390 [69 N. W. 686]; *Brown* v. *Cone*, 80 App. Div. 413 [81 N. Y. Supp. 89]; *Lawall* v. *Gorman*, 180 Pa. St. 532 [57 Am. St. Rep. 662, 37 Atl. 98]; *Garber* v. *Blatchley*, 51 W. Va. 147 [42 S. E. 222]; *New Home S. M. Co.* v. *Seago*, 128 N. C. 158 [38 S. E. 805]; *Union Hosiery Co.* v. *Hodgson*, 72 N. H. 427 [57 Atl. 384]; *Nostrum* v. *Halliday*, 39 Neb. 829 [58 N. W. 429], and a host of other authorities that might be cited.)"

In 2 C. J., pages 933, 934, section 689, it is said:

"The rule that the declarations of an agent are, as against his principal, inadmissible to prove the fact of his agency does not apply to his testimony as a witness on the trial in which such fact is in issue; and consequently the testimony of the agent, unless he is disqualified for some other reason, is competent to establish the fact of his agency, and the existence of facts from which the agency may be inferred, at least where the authority was verbally conferred; and to refuse to allow him to testify and be cross-examined, is reversible error."

And as stated in 2 Am. Jur., page 353, section 446:

"Although an alleged agent's extrajudicial statements are not admissible to prove the fact of his agency, the ·fact may, when it rests in parol, be established on the trial by the testimony of the agent himself; he is a competent witness to prove the agency, and his testimony cannot be restricted to the mere words used by the principal, but is admissible generally on the whole subject."

The agent Langguth testified, in respect to a conversation with plaintiff Rose, as follows: "Mr. Rose asked me if the Company would issue it (the bond), and I said, yes, we

would . . ." Again, he testified: "We were working on a bunch of figures, and questions were asked by Mr. Rose, and I said, 'Yes, definitely, we will bond you'; and that was all there was to it." Such testimony, together with all the surrounding facts and circumstances proven by plaintiffs, would be sufficient to give rise to the inference that the agent was duly authorized by respondent to issue the bond. After the agent had testified, plaintiffs Rose and Syar were called to the witness stand, and corroborated the testimony of the agent. Their testimony is detailed above. ▮ While the admissions, statements and declarations of an agent, other than his own testimony in the case in which the issue arises, are not admissible to prove such agency, they are nevertheless admissible for such purpose after prima facie proof of such agency has been made. (2 Am. Jur., p. 352, § 445; 2 C. J., p. 938, § 692.)

It is contended that the evidence shows that the issuance of the bond was contingent upon the furnishing of a financial statement by appellants. This is a debatable question, and might have been resolved either way by the jury. Such evidence may therefore be disregarded on an appeal of this character. The testimony of the agent that: "definitely, we will bond you," certainly is in conflict with the theory that there was any contingency existing.

▮ We are satisfied that, under the authorities cited above, plaintiffs made out a prima facie case, and that the trial court erred in granting the motion for nonsuit.

The judgment is reversed.

Thompson, Acting P. J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 25, 1942.